**Frank X. MARTINEZ,
Petitioner-Appellant,**

v.

**Levi ROMERO, Respondent-Appellee.**

**No. 79–1467.**

United States Court of Appeals,
Tenth Circuit.

Submitted June 23, 1979.

Decided July 30, 1980.

William W. Deaton, Albuquerque, N. M., for petitioner-appellant.

Jeff Bingaman, Atty. Gen., and Andrea Buzzard, Asst. Atty. Gen., Santa Fe, N. M., for respondent-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Pursuant to a plea agreement, petitioner pled guilty in a New Mexico court to a robbery charge and admitted he was the same person who had been convicted of two other felonies enumerated in a supplemen-

.tal information. Through application of New Mexico's habitual offender statute, N.M.Stat.Ann. § 31–18–5 (1978), he was then sentenced to a 10–to–30–year prison term, concurrent to any existing sentences. Petitioner brought this habeas corpus action, pursuant to 28 U.S.C. § 2254, challenging the use of a 1961 petty larceny conviction for the purpose of habitual offender sentencing. The 1961 conviction was secured after petitioner signed a form, perhaps involuntarily, waiving his right to counsel. The district court rejected petitioner's claims, and this appeal resulted.

Petitioner's most fundamental challenge is that he did not receive effective assistance of counsel at the time of his conviction as a habitual offender. His counsel did not seek to bring to the court's attention the fact that the 1961 conviction was possibly tainted and, in fact, the counsel may not have investigated the particulars of that prior conviction. Petitioner now also alleges that he was affirmatively misled by trial counsel.

The record supports no implication that petitioner's counsel did not "exercise the skill, judgment and diligence of a reasonably competent defense attorney." *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir. 1980) (en banc), *cert. denied*, 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980). Petitioner has, of course, no constitutional right to a plea bargain on his own terms. Had petitioner gone to trial as originally charged, under the armed robbery statute, counsel thought conviction to be certain.[1] Armed robbery carries a statutory sentence of 10–to–50 years. *See* N.M.Stat.Ann. §§ 30–16–2, 31–18–3(B) (1978). A successful challenge to only one of the prior convictions would have resulted in enhancement to a 25–to–100–year term. *See* N.M.Stat.Ann. § 31–18–5(A) (1978). If the challenge to both prior convictions had been unsuccessful, double enhancement would have left petitioner with a 50–to–150–year sentence. *See* N.M. Stat.Ann. § 31–18–5(B) (1978). Furthermore, any of these sentences could have been imposed to run consecutively to an impending term resulting from parole revocation. Under such forbidding circumstances, counsel, at petitioner's request, sought to plea bargain.

Counsel reasonably secured agreement for a lesser charge, robbery, with the understanding that petitioner would then not contest identity at the habitual offender proceeding. Counsel believed that because of New Mexico's emphasis on its habitual offender program, prosecutors could not agree to drop habitual offender charges. Record, vol. 2, at 9. His bargain was therefore based on reducing the armed robbery charge. Prosecutors may, of course, condition plea offers upon a defendant's waiver of other constitutional challenges. No element of coercion is involved "so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Although petitioner now argues that counsel could have attacked the prior conviction while still conceding identity, the trial counsel understood and advised petitioner that such a step would have violated the plea agreement. Record, vol. 2, at 15. His understanding was based on extensive experience as a New Mexico criminal defense lawyer.

We see no basis for a determination that the plea bargain was a bad one or that petitioner did not fully approve his counsel's actions throughout the negotiations process.[2]

---

1. Counsel did investigate the only apparent, minimally plausible defense, the lack of specific intent. Consultation with a medical specialist, however, indicated that such a defense could not prevail.

2. We express no opinion about the constitutional validity of the 1961 conviction. Petition-er emphasizes, and trial counsel's deposition confirms, that he was told that admission of identity would not preclude later collateral attack on the 1961 conviction. We do not perceive that advice to be either incorrect or misleading.

■ Petitioner also challenges the constitutionality of the habitual offender scheme,[3] directing his challenge to the practice of New Mexico prosecutors. Although he concedes that, under New Mexico law, a prosecutor has the "duty [where applicable] . . . to file an information charging the person as a habitual offender," N.M. Stat.Ann. § 31–18–6 (1978); *State v. Sedillo*, 82 N.M. 287, 480 P.2d 401, 404 (Ct.App. 1971), petitioner suggests that in actual practice unbridled discretion is vested in the prosecutor.

A certain measure of discretion is inevitable in the performance of the prosecutorial function. "[T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed.2d 446 (1962); *Brown v. Parratt*, 560 F.2d 303, 304 (8th Cir. 1977). Petitioner presents us with no support for the proposition that the habitual offender statute has not been uniformly applied, and he does not allege that its application to him "was based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles*, 368 U.S. at 456, 82 S.Ct. at 506. *See also United States v. Batchelder*, 442 U.S. 114, 125 n.9, 99 S.Ct. 2198, 2204 n.9, 60 L.Ed.2d 755 (1979). In no sense does the statutory scheme delegate to the prosecution the legislative responsibility to fix criminal penalties. *Cf. id.* at 125–26, 99 S.Ct. at 2204-05.

■ As his final challenge, petitioner asserts a deprivation of due process because of the allegedly untimely filing of the supplemental habitual offender information. He argues that, under N.M.Stat.Ann. § 30–1–8 (1978),[4] an information based on the 1961 crime must have been filed within three years of the commission of that crime.

A state's failure to follow its own statutory criminal procedures may, in some circumstances, constitute a deprivation of due process. Here, however, we see no departure from New Mexico's statutory mandates. The New Mexico Supreme Court has specifically held that "[t]he filing of a habitual criminal information does not create a new criminal case nor constitute a separate offense. Proof of the conviction of prior felonies merely increases the penalty to be imposed upon conviction of a subsequent felony in New Mexico." *State v. Knight*, 75 N.M. 197, 402 P.2d 380, 382 (1965). Under this interpretation of the habitual offender statute, petitioner has alleged no wrong justifying federal habeas corpus relief.

AFFIRMED.

---

3. We note that habitual offender schemes routinely survive constitutional attack. *See Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 1136, 63 L.Ed.2d 382 (1980).

4. In pertinent part, § 30–1–8 reads:
   No person shall hereafter be prosecuted, tried, or punished in any court of this state, unless the indictment shall be found or information or complaint filed therefor within the time hereinafter provided:

A. for a capital felony, within ten years from the time the crime was committed;
B. for a first degree felony, within ten years from the time the crime was committed;
C. for a second degree felony, within six years from the time the crime was committed;
D. for a third or fourth degree felony, within three years from the time the crime was committed . . . .