421 A.2d 183

**COMMONWEALTH of Pennsylvania**

**v.**

**Thomas TABB, Appellant.**

Supreme Court of Pennsylvania.

Argued April 22, 1980.

Decided Sept. 22, 1980.

Thomas Colas Carroll, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Division, Marianne Cox, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

374

## OPINION

NIX, Justice.

The sole issue presented in this appeal is whether the Commonwealth may now try appellant for murder of the first or second degree after the Supreme Court awarded a new trial, having reversed the judgment of sentence for murder of the third degree because of a failure during the guilty plea colloquy to adequately advise appellant of the elements of the crimes of which he was charged as required under *Commonwealth v. Ingram.*[1]

On January 16, 1975, appellant Tabb was indicted on charges of murder, robbery, criminal conspiracy and possession of an instrument of crime arising out of a hold–up slaying in Philadelphia County on December 10, 1974. Thereafter, on June 9, 1975, appellant entered a negotiated plea of guilty to murder generally. As part of the plea agreement, the Commonwealth certified that the charge of murder rose no higher than third degree, recommended a sentence of ten to twenty years on the murder charge and five to ten years on the robbery charge. Additionally, the Commonwealth moved for a nolle prosequi of the weapons and· conspiracy charges. After an on–the–record colloquy and a summary of the evidence, presented by the Commonwealth, the court accepted the guilty plea, and the Commonwealth's certification of third degree murder, sentenced appellant to the terms recommended by the Commonwealth and granted a nolle prosequi of the lesser charges of conspiracy and possession of an instrument of crime. From that action, appellant took his first direct appeal to this Court wherein the judgment of sentence was reversed and a new trial awarded, relying upon Pa.R.Crim.P. 319(a) and *Commonwealth v. Ingram, supra,* in finding the on–the–record colloquy did not meet the required standards. *Commonwealth v. Tabb,* 477 Pa. 115, 383 A.2d 849 (1978).

Prior to appellant's new trial he filed an omnibus pretrial motion claiming double jeopardy barred trial on murder of

1. 455 Pa. 198, 316 A.2d 77 (1974).

the first and second degrees. After hearing on June 13, 1978, defendant's motion was denied. The instant interlocutory appeal is pursuant to *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). We now affirm the trial court's order denying appellant's motion and remand for trial.

Appellant argues double jeopardy under the federal and state constitutions bars retrial on charges of murder of the first and second degrees. He asserts *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979), does not apply because 1) he entered a plea of guilty to murder generally, while in *Klobuchir* the appellant entered a plea of guilty to murder in the third degree; and 2) the court's conviction of murder in the third degree in his case was an adjudication, alleged to be indistinguishable from a jury verdict or a bench finding in a non–jury trial. Appellant concludes the court's acceptance of the certification was an implicit acquittal of all higher degrees.

En passant, appellant alludes to the issues of collateral estoppel, autrefois acquit, and section 109 of the Pennsylvania Crimes Code. 18 Pa.C.S.A. § 109. Yet he correctly acknowledges those issues are not presented for review here.[2] We confine consideration to those protections afforded appellant under federal and state double jeopardy provisions. To the extent any of the aforementioned doctrines or code provisions presently intimated to be issues are later advanced as giving greater protection than the traditional constitutional one of double jeopardy, we now consider only the constitutional protection provided at this stage of the proceedings.[2a]

**2.** A *Bolden* appeal does not permit "piggybacking" non–double jeopardy issues. *Commonwealth v. Klobuchir, supra*; and *see, e. g., United States v. MacDonald*, 435 U.S. 850, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

**2a.** The collateral estoppel aspect of double jeopardy, as defined in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), is clearly not applicable under the facts of this case nor is it argued by appellant.

The essence of appellant's argument is, court acceptance of a plea agreement wherein defendant pleads guilty to murder generally and the prosecution certifies the degree together with presentation of a summary of its case constitutes an actual resolution in the defendant's favor of some or all of the factual elements of offenses of a degree or degrees higher than that of which defendant was convicted. Simply put, appellant says his case is not a plea agreement, but a court adjudication, and thus not controlled by *Klobuchir*. It is understandable why appellant would seek to distinguish *Klobuchir*. *Klobuchir* held federal constitutional requirements prohibiting double jeopardy do not bar retrial on higher degrees of murder after a plea of guilty to and a conviction of third degree murder are set aside upon defendant's procurement, and Pennsylvania double jeopardy requirements, *citing Commonwealth v. Metz*, 425 Pa. 188, 288 A.2d 729 (1967) also do not bar prosecution in such circumstances.

The attempted distinction between *Klobuchir* and this case is meritless because a guilty plea to murder generally, as well as a guilty plea to third degree, may be withdrawn before sentence. In the instant case, the plea was voided upon direct appeal. So the axis posture of adjudication or factual determination asserted by appellant collapses when juxtaposed to the realities of the colloquy and Pa.R.Crim.P. 319(b)(3).[3]

THE COURT: This is the case of Commonwealth vs. Thomas Tabb. The Court takes the position, and will hear the guilty plea, pursuant to the negotiations and that if the Court feels that the sentence recommended by both counsel is excessive and the Court chooses to sentence less, the Court reserves that right. *And if the Court feels the*

---

**3.** Rule 319. Pleas and Plea Agreements

 \* \* \* \* \* \*

(b) Plea agreements.

 \* \* \* \* \* \*

(3) If the judge is satisfied that the plea is understandingly and voluntarily tendered, he may accept the plea. If thereafter the judge decides not to concur in the plea agreement, he shall permit the defendant to withdraw his plea.

*sentence is insufficient the Court will permit the Defendant to withdraw his plea.* (Emphasis supplied). (Transcript of June 9, 1975, at p. 5).

And as was stated in *Klobuchir* at p. 886:

> Since the plea was a negotiated one, and the acceptance of the lesser degree of murder a term of the agreement, the court did not have the option of entering a finding of a higher degree of homicide upon the plea. If the court was dissatisfied with the terms of the bargain the plea would not have been accepted and the appellant would have had the option of proceeding to trial before a jury. See Pa.R.Crim.P. 319(b)(3).

 Since the appellant had the right to withdraw his plea if the court rejected the plea agreement, the court's finding of guilty of murder in the third degree was not an adjudication that actually resolved in appellant's favor, correct or not, some or all of the factual elements of the offense charged, as in *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) or in *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).[4] In both *Price* and *Green* the defendants ran the gauntlet for first degree murder in their original trials. In both cases juries refused to convict on first degree murder, although given full opportunity to do so and no extraordinary circumstances existed which prevented them from doing so. It is clear that the *sine qua non* for finding implicit acquittal is failure to convict in the face of full opportunity for conviction. *Commonwealth v. Klobuchir, supra*, at 886. A plea agreement does not provide such an opportunity.[5] We therefore find that *Klobuchir* applies to this appeal. In essence we are saying that jeopardy did not attach as to murder of the first and second degree under the terms of the bargain and therefore double jeopardy considerations are not applicable.

4. In *Price* and *Green* the proceedings were adversary, the defendants pled not guilty and the trial was before a jury.

5. Since this is a plea bargain case, we do not reach the question of whether there can be an implicit acquittal in a trial without a jury.

The weight of federal authority supporting the conclusion of *Klobuchir* now include *United States ex rel. Williams v. McMann*, 436 F.2d 103 (2d Cir.1970); *Hawk v. Berkemer*, 610 F.2d 445 (6th Cir.1979) overruling *Rivers v. Lucas*, 477 F.2d 199 (6th Cir.1973) and *Mullreed v. Kropp*, 425 F.2d 1095 (6th Cir.1970) *sub silentio*; *United States v. Anderson*, 514 F.2d 583 (7th Cir.1975); *United States v. Williams*, 534 F.2d 119 (8th Cir.) *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976); *United States v. Wells*, 430 F.2d 225 (9th Cir. 1970); *Ward v. Page*, 424 F.2d 491 (10th Cir.) *cert. denied* 400 U.S. 917, 91 S.Ct. 178, 27 L.Ed.2d 157 (1970); *United States v. Myles*, 430 F.Supp. 98 (D.D.C.1977); *cf. United States v. Johnson*, 537 F.2d 1170 (4th Cir.1976). *See also Santobello v. New York*, 404 U.S. 257, 263 and n.2, 92 S.Ct. 495, 499 and n.2, 30 L.Ed.2d 427 (1971) (dictum).

■ An analysis based upon the purposes sought to be achieved by the double jeopardy provisions also dictates the result we reach today. The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." But it does not protect against retrial for the same offense after conviction if the conviction is set aside through defendant's procurement. *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The most cogent reason for the holding was set forth by Mr. Justice Frankfurter, dissenting in *Green v. United States*, 355 U.S. 184, 204, 78 S.Ct. 221, 232, 2 L.Ed.2d 199 (1957) and discussing *Ball* :

On a literal reading of the constitutional provision, with an eye exclusively to the interests of the defendants, they had been 'once in jeopardy', and were entitled to the benefit of a reversal of their convictions without the hazard of a new trial. The Court recognized, however, that such a wooden interpretation would distort the purposes of the constitutional provision to the prejudice of society's legitimate interest in convicting the guilty....

The Frankfurter explanation reappears in structured form in *Breed v. Jones*, 421 U.S. 519, 534, 95 S.Ct. 1779, 1788, 44

L.Ed.2d 346 (1975) when the court discusses the reasoning behind the *Ball* holding:

> The conclusion, 'continuing jeopardy,' as distinguished from the concept, has occasionally been used to explain why an accused who has secured the reversal of a conviction on appeal may be retried for the same offense. See *Green v. United States*, 355 U.S., at 189, 78 S.Ct. at 224; *Price v. Georgia*, 398 U.S., at 326, 90 S.Ct. at 1759; *United States v. Wilson, supra*, 420 U.S. at 343–344, n.11, 95 S.Ct. at 1022 n.11. Probably a more satisfactory explanation lies in analysis of the restrictive interests involved. See *United States v. Tateo*, 377 U.S. 463, 465–466, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964); *Price v. Georgia, supra*, 398 U.S. at 329, n.4, 90 S.Ct. at 1761, n.4; *United States v. Wilson, supra.*

It has been stated that "the principle of double jeopardy serves not one, but three distinct interests. In ascending degrees of importance, they are: (1) an interest in finality which may be overcome relatively easily; (2) an interest in avoiding double punishment which comes armed with a presumption in the defendant's favor; and (3) an interest in nullification–*viz.*, an interest in allowing the system to acquit against the evidence–which is absolute. These three interests are loosely connected to the notion of ending litigation, and it is this connection that provides textual justification for bringing them under the common 'rubric' of double jeopardy." [6]

Appellant, by his procurement of reversal of his guilty plea has occasioned a deferment of finality of the third degree murder charge. " . . . [T]o require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect." *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978). There is no actual or implied acquittal here for

---

6. Weston and Drubel, "Toward a General Theory of Double Jeopardy", The Supreme Court Review 1978, p. 81.

under *United States v. Scott, supra* at 97, 98 S.Ct. at 2196–2197, "... a defendant is acquitted only when 'the ruling of the judge whatever its label, actually represents a resolution in the defendant's favor, correct or not, of some or all of the factual elements of the offense charged' (citing *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)."[7] Consequently, there is no nullification interest to be protected, nor, at this stage of the proceedings, is there a double punishment question. On the other hand the public has a right "to one complete opportunity to convict those who have violated its laws." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978). To permit a defendant to reduce the charges against him by procurement of reversal and remand in a plea bargain case is as repugnant[8] as permitting the prosecution to try to convince a second trier of fact of defendant's guilt after having failed in its first attempt.[9]

We find the appellant not placed in jeopardy of first or second degree murder by the court's acceptance of the Commonwealth's certification of third degree murder. We further find there are no recognized compelling interests operable in the double jeopardy principle which bars prosecution of appellant for first and second degree murder. Accordingly, we hold neither the Fifth Amendment's Double Jeopardy Clause nor the Pennsylvania Constitution's double jeopardy provision bars the prosecution of appellant for first and second degree murder.

Order affirmed.

LARSEN, J., concurred in the result.

EAGEN, C. J., filed a dissenting opinion.

ROBERTS, J., filed a dissenting opinion.

7. This language overturned *Rivers v. Lucas, supra*, in the 6th Cir. case of *Hawk v. Berkemer, supra*.

8. *Cf.* opinion by Mr. Justice Roberts in *Commonwealth v. Metz*, 425 Pa. 188, 192 n.9, 288 A.2d 727, 729 n.9 (1967).

9. Often called "two bites at the apple."

EAGEN, Chief Justice, dissenting.

In my *Opinion in Support of Reversal,* in *Commonwealth v. Klobuchir,* 486 Pa. 241, 257, 405 A.2d 881, 889 (1979), I explained that, while principles of double jeopardy do not prohibit imposition of a greater sentence following a conviction after retrial than that imposed following conviction in an initial trial which is reversed for trial error, the chilling effect on the constitutional right of appeal which is afforded in this Commonwealth and due process which, to avoid vindictiveness, prohibits imposition of a greater sentence after retrial absent identifiable conduct occurring after the time of original sentence should prohibit trial on any charge greater than that to which an accused has originally plead when the initial conviction is reversed. Hence, as in *Commonwealth v. Klobuchir,* supra, I would here assume jurisdiction and grant relief.*

ROBERTS, Justice, dissenting.

For the reasons set forth in my Opinion in Support of Reversal in *Commonwealth v. Klobuchir,* 486 Pa. 241, 405 A.2d 881 (1979) and my concurring and dissenting opinion in *Commonwealth v. Newmiller,* 487 Pa. 410, 409 A.2d 834 (1979), I dissent.

Pursuant to a plea agreement, appellant pleaded guilty to murder generally and the Commonwealth recommended that appellant be sentenced on a charge of murder of the third degree. This recommendation was accepted and acted upon by the trial judge only after he had conducted a colloquy with appellant and had heard and evaluated the Commonwealth's evidence.

The majority now allows the Commonwealth to try appellant on charges of murder of the first and second degree after he has successfully appealed the validity of his guilty plea. Such a trial violates fundamental principles of due

---

* I do not mean to suggest that, in all cases presenting circumstances such as here presented, plenary jurisdiction should be assumed. But I would do so until a definitive ruling on this issue, i. e. the due process issue, is announced.

process by permitting the Commonwealth to take revenge against appellant for his success in exercising his right of appeal. See dissenting opinion of Eagen, C. J.

Judicial condonation of such prosecutorial retaliation will inevitably deter similarly situated individuals from seeking to protect their right to a voluntarily entered guilty plea. As the Supreme Court recognized in *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969):

> "Where . . . the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, 'penalizing those who choose to exercise' constitutional rights, 'would be patently unconstitutional.' . . . And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to chill the exercise of basic constitutional rights. . . . But, even if the first conviction has been set aside for nonconstitutional error, the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law." (Citations omitted).

To allow the Commonwealth to try appellant on charges of murder of the first and second degrees sanctions and, in fact, encourages prosecutorial vindictiveness. This danger far outweighs whatever "justice" might be hypothesized to result in this case–or in any case–from a trial on greater charges than those upon which the appellant was originally convicted and sentenced.

By recommending that the trial court find appellant guilty of murder of the third degree, the Commonwealth acknowledged that justice would be adequately served if a conviction and sentence on that charge were entered against him. More important, the fact–finder's acceptance of the guilty plea constituted a detached and independent determination that the charge and sentence recommended by the Commonwealth were in fact just. Thus, the fair administration of justice would in no way be served by requiring

appellant now to stand trial for murder of the first or second degree. Rather, the fairness and impartiality of our system will be seriously undermined if the prosecutor is permitted to forget that he is

> " 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a particular and very definite sense the servant of the law ....' *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314."

*Gannett Co. v. DePasquale*, 443 U.S. 368, 384–385, 99 S.Ct. 2989, 2908, 61 L.Ed.2d 608 n.12 (1979).

The majority's determination that the Commonwealth may try appellant on a charge of murder of the first or second degree further offends fundamental constitutional principles by placing appellant twice in jeopardy for these offenses. The judge's entry of sentence constituted an adjudication that appellant was guilty of murder of the third degree, and of no higher degree. Under Pennsylvania law, before a trial court accepts any guilty plea, it must determine that there exists a factual basis to support the degree of guilt charged. *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973); Comment to Pa.R.Crim.P. 319(a). See also ABA Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.6 (Approved Draft, 1968); accord, ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.2(b). Moreover, in non–capital murder cases, when, as here, "a defendant enters a plea of guilty to a charge of murder generally, the judge before whom the plea was entered shall alone determine the degree of guilt." Pa.R. Crim.P. 319(c).

If appellant had gone to trial on a charge of murder generally and been convicted of murder of the third degree,

it is clear that, following a successful appeal, he could not be retried for murder of the first or second degree. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). There is no valid ground upon which to distinguish appellant's conviction on the basis of his guilty plea, for the fact–finder's acceptance of the plea works the same result as a trial verdict. The risk to appellant continued until the judge "alone determine[d] the degree of guilt," accepted his plea and the Commonwealth's recommendation, and sentenced him. Jeopardy thus clearly attached to all degrees of criminal homicide considered at appellant's guilty plea hearing. Only with the adjudication of guilt and the entry of sentence did appellant's jeopardy for the greater offense of murder of the first and second degrees come to an end.

Citing the Opinion in Support of Affirmance in *Commonwealth v. Klobuchir*, supra, the majority concludes that appellant's right to withdraw a guilty plea prior to sentencing prevents jeopardy from attaching to the higher degrees of murder. This view, however, ignores the practical consequences of such a withdrawal following the fact–finder's rejection of the plea. A judge may, of course, refuse to concur in a plea agreement if he determines that the defendant's degree of guilt exceeds the prosecutor's recommended charge. In such cases, "he shall permit the defendant to withdraw his plea." Pa.R.Crim.P. 319(b)(3). This right of withdrawal, of which the majority makes so much, is in reality hollow indeed, for once his plea has been rejected, a defendant has no choice but to withdraw it. His only choice is between pleading guilty to, or standing trial on, a higher charge. Thus, contrary to the assertion of the majority, appellant's risk of trial and conviction for murder of the first or second degree was in no way mitigated by his right to withdraw his guilty plea.

The result reached by the majority violates fundamental principles of due process and the prohibition against double jeopardy. Thus, a Pennsylvania litigant is once again compelled to turn to the federal courts for vindication of his constitutional rights. See *Ferri v. Ackerman*, 444 U.S. 193,

100 S.Ct. 402, 62 L.Ed.2d 355 (1979), reversing 483 Pa. 90, 394 A.2d 553 (1978); *United States ex rel. Sullivan v. Cuyler,* 631 F.2d 14 (1980).