425 A.2d 401

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Bruce E. WARD, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 3, 1980.

Decided Feb. 4, 1981.

Leonard G. Ambrose, III, Erie, for appellant.

Michael J. Veshecco, Dist. Atty., Frank J. Scutella, Asst. Dist. Atty., Erie, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

This is an interlocutory appeal from the denial of a pretrial motion to dismiss the charge of first degree murder under an indictment for murder generally.

In September, 1977, after having negotiated a plea bargain with the District Attorney of Erie County, appellant, Bruce Earl Ward, pleaded guilty to murder generally. Under the terms of the plea agreement, it was stipulated that the degree of murder adjudicated would rise no higher than murder of the second degree. The trial court accepted the plea and stipulation, and, after a degree of guilt hearing in November, 1977, found appellant guilty of second degree murder.

The plea was challenged subsequently on direct appeal. This Court held the plea colloquy inadequate, reversed the judgment of sentence and granted a new trial. *Commonwealth v. Ward*, 483 Pa. 53, 394 A.2d 535 (1978). Venue was transferred to Beaver County, where the appellant filed the instant motion, claiming that the Commonwealth's intention to proceed against him on a charge of first degree murder would place him twice in jeopardy for that crime. Our allowance of interlocutory appeal is predicated solely on the double jeopardy claim pursuant to our holding in *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).[1]

The double jeopardy question raised here was addressed in *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979) and *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980). The due process claim was not before the Court in either *Klobuchir* or *Tabb*, but the Opinions in Support of Reversal in *Klobuchir* and the Dissenting Opinions in *Tabb* alluded to it, both directly, by suggesting disposition of the issue under an assumption of plenary jurisdiction, and indirectly, by combining discussion of due process issues with the merits of the double jeopardy claim. In order to put an end to the uncertainty surrounding these related issues, we will address the due process claim in this case under our plenary jurisdiction.[2]

Appellant relies upon, and recognizes that the strength of his claim derives entirely from, the Opinions in Support of Reversal in *Klobuchir, supra*. It will thus be necessary to address some of the arguments made therein (and, incidentally, in Mr. Justice Roberts' dissent in *Tabb*) while disposing of both the double jeopardy and the due process issues raised here.

1. Appellant has also requested review of the trial court order on due process and equal protection grounds. While we specifically decline to expand the scope of interlocutory review under *Bolden*, we note that the due process question herein has been a source of disagreement and confusion in double jeopardy matters before this Court on several occasions and should now be laid to rest.

2. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S.A. § 722.

## I

The defense of double jeopardy could be sustained here if, and only if, an "implied acquittal" had occurred under the rationale of *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). In *Green*, the United States Supreme Court held that a defendant who has once been tried by a jury on a greater charge but convicted only of a lesser included offense, and who has successfully attacked his conviction on appeal, may not subsequently be tried again on the greater charge. When presented with the option of convicting for first degree murder or a lesser offense, the jury in *Green* chose to convict for second degree murder, thus implicitly acquitting of and barring further prosecution on the first degree murder charge.

■ The due process claim arises out of the possibility that invocation of a defendant's appellate rights may be chilled by fear that greater punishment would be imposed after a successful appeal or collateral attack.[3] It is clear, however, from decisions of the United States Supreme Court and the unanimous position of numerous federal appellate and trial courts, that due process standards would be violated by the inhibition of appellate rights only where an implied acquittal has in fact taken place or when increased punishment results solely from judicial or prosecutorial vindictiveness toward the defendant for having pursued a successful appeal or collateral attack on his original conviction.

## II

The essential question underlying the issue of "implied acquittal" is whether an actual adjudication has taken place on the merits of the charges sought to be stricken on retrial. The Majority Opinion in *Tabb, supra*, and the Opinion in Support of Affirmance in *Klobuchir, supra*, concluded that "the *sine qua non* for finding implicit acquittal is a failure to convict in the face of *full opportunity for conviction*" (*Tabb*, slip opin. p. 6, 421 A.2d 186, emphasis added; *Klobuchir*, 405

**3.** See Van Alstyne, *In Gideon's Wake: Harsher Penalties and the "Successful" Criminal Appellant*, 74 Yale L.J. 606 (1965).

A.2d at 886). This result is based on the unequivocal language in *Green, supra*, 355 U.S. at 190, 78 S.Ct. at 225, revealing quite clearly why the Supreme Court there concluded that an "implicit acquittal" had occurred:

> Green was in *direct peril* of being convicted and punished for first degree murder at his first trial. He was forced to run the gantlet once on that charge and the jury refused to convict him. When given the choice between finding him guilty of either first or second degree-murder it chose the latter. In this situation the great majority of cases in this country have regarded the jury's verdict as an implicit acquittal on the charge of first degree murder....
> [The jury] was given a *full opportunity to return a verdict* and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged.... (Emphasis supplied)

Relying upon the following language from Mr. Justice Roberts' Opinion in Support of Reversal in *Klobuchir*, appellant here suggests that the theory of implied acquittal in *Green* is applicable where the former conviction rests on the trial judge's acceptance of a guilty plea pursuant to a plea bargain:

> In view of the trial court's authority in Pennsylvania to reject a negotiated plea, an adjudication in which it is determined that the plea is supported by a factual basis and in which the plea of guilty is accepted, necessarily includes the court's rejection of greater degrees of guilt. 486 Pa. at 262, 405 A.2d at 1368–69.

We refuse to adopt the premise, however, that a plea agreement affords an "opportunity" to rule on the merits of charges not embraced by the plea. By definition, the plea bargain eliminates the greater charges from consideration. The trial judge here was limited to the options of accepting or rejecting the plea and stipulation of degree. Once the plea was accepted, the first degree murder charge was excluded from any further inquiry into the degree of guilt.

Although a trial court's acceptance of a guilty plea must be predicated upon an adjudication that there is a factual basis to support the plea, that conclusion only assures that the crime to which the plea is addressed actually occurred; it does not rule out the possibility that the crime adjudicated may be a lesser offense included in a more serious criminal transaction. As such, it does not evidence *any* opportunity, much less a "full" opportunity, to rule on the greater charges as required under *Green*.[4]

In *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), the United States Supreme Court ruled that "a defendant is acquitted *only when* 'the ruling of a judge, whatever its label, *actually* represents a resolution [in defendant's favor], correct or not, of some or all of the factual elements of the offense charged' ", (emphasis added) 437 U.S. at 97, 98 S.Ct. at 2197, quoting from *United States v. Martin Linen*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977). In *United States v. Williams*, 534 F.2d 119 (8th Cir.) *cert. denied*, 429 U.S. 894, 97 S.Ct. 255, 50 L.Ed.2d 177 (1976), a case involving degrees of bank robbery under 18 U.S.C. § 2113, the Eighth Circuit dealt with a claim of "implicit acquittal" arising out of the acceptance of a guilty plea on lesser offenses within the indictment. The Court distinguished the case from one in which the rationale of *Green v. United States, supra*, and a case essentially identical to *Green* with respect to the issue at bar, *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), would apply:

Defendant contends that his position is, for double jeopardy purposes, indistinguishable from that of Green or Price, that it is immaterial whether the former conviction on the lesser charge resulted from a trial on both the greater and lesser charges or from a plea to the lesser charge only.

4. It is further noted in the Opinion in Support of Reversal in *Klobuchir* that "until the defendant was formally adjudicated guilty of murder of the [lesser] degree he was at risk of conviction of a higher degree of homicide." 486 Pa. at 261, 405 A.2d 881. Although this is certainly true, it illustrates only that the trial court remains free to reject the terms of the plea bargain until sentence has been imposed. It says absolutely nothing about whether the trial court has adjudicated the issue of guilt on the greater charges.

We cannot agree. The Court in *Price, supra,* 398 U.S. at 328–29, 90 S.Ct. at 1760–61, 26 L.Ed.2d at 304–05, states that its holdings in both *Green* and *Price* rest on two premises. First, a jury's verdict of guilty on a lesser charge is an "implicit acquittal" on the greater charge. Second, a defendant's jeopardy on the greater charge ends when the first jury is given a "full opportunity" to return a verdict on that charge and instead returns a verdict on the lesser charge only. *Neither premise is applicable when the original conviction on the lesser charge follows a guilty plea rather than a trial on both charges....*

... Williams was not, in the proceedings in which his guilty plea was accepted, in direct peril of being convicted and punished for violating § 2113(d) and (e). He was not forced to run the gantlet on those charges. No trier of fact refused to convict him on those charges or the § 2113(a) charge. The district judge had the *sole options* of accepting or rejecting the plea on the § 2113(a) charge. By accepting it, he made no determination, explicit or implicit, on the merits of the charges not embraced in the plea. There was no implicit acquittal. The second premise of *Green* and *Price* is patently inapplicable where the former conviction rests on a guilty plea. *A plea to a lesser charge necessarily deprives court and jury of an opportunity to consider the greater charge.*

534 F.2d at 121–122. (Emphasis supplied)

Pursuant to a plea bargain, the prosecution in the case before us certified that the degree of murder adjudicated would go no higher than second degree. Although a substantial colloquy took place with respect to the degree of guilt, it was restricted to the question of whether the crime was murder of the second or of the third degree. At no time did the trial court have the option to adjudicate the merits of a charge of first degree murder. By the terms of the plea bargain, its inquiry was limited to consideration of second degree murder or a lesser offense. Appellant was not "in direct peril" of being convicted and punished for first degree murder.

Mr. Justice Roberts' dissent in *Tabb, supra,* suggested that by its willingness to certify guilt to a lesser degree than the evidence would support, the Commonwealth acknowledged that justice would be adequately served if a conviction and sentence on the lesser charge were entered against the defendant. To the extent that this may be so in the plea bargain context, it is grounded upon society's interest in prompt and efficient administration of criminal justice and the conservation of limited judicial resources.[5] The framework of the plea bargaining system would be undermined, however, by the suggestion that acceptance of a plea to a lesser offense constitutes an adjudication in defendant's favor of a greater offense otherwise supported by the evidence. For when the defendant *refuses* a bargain, it is presumed that the prosecution will proceed on the greater charges. If the defendant were permitted to *accept* a bargain and then *revoke* his part while leaving the prosecution bound, the entire purpose of plea bargaining would be defeated. Every defendant would find it in his interest to plead and then challenge his plea after sentencing. Every plea would thus require subsequent litigation, and if successfully revoked, would be followed by the very trial and consumption of judicial resources which the bargain supposedly had precluded. As a result, the criminal justice system would become *more* clogged with litigation than if there were no plea bargaining.[6] This bizarre scenario was rejected by the Second Circuit in *United States ex rel. Williams v. McCann,* 436 F.2d 103 (2nd Cir., 1970) where the appellant, having withdrawn a guilty plea to a lesser offense, received

5. As Mr. Justice Nix pointed out in *Klobuchir,*
   "Nor does the fact that the Court accepted the plea necessarily suggest an implicit conclusion that the evidence might not also support a higher degree of the crime of murder. There are many considerations that would justify the acceptance of a plea for a lesser degree than the evidence might support." 486 A.2d at 252; 405 A.2d at 886–87.

6. See *The Supreme Court,* 1969 Term, 84 Harv.L.Rev. 30, 150 (1970) (with a significant reduction in the proportion of cases terminated by guilty plea, "the criminal justice system would shift from its present low gear to a halt").

a longer sentence after trial and conviction of the greater offense originally charged:

> For us to hold that one in Williams' position may not be tried and sentenced upon the charge originally brought would encourage gamesmanship of a most offensive nature. Defendants would be rewarded for prevailing upon the prosecutor to accept a reduced charge and to recommend a lighter punishment in return for a guilty plea, when the defendant intended at the time he entered that plea to attack it at some future date ... [A]ny reason defendant could conceive for setting aside his plea and sentence would lose him little. If the defendant's argument were to prevail, then a trial on the lesser charge only could result. The defendant would thus run no risks by this maneuver for his trial could end in acquittal, but if he should be convicted, he urges he could not receive a sentence greater than that imposed on the guilty plea to the lesser offense. This is nothing more than a "heads-I-win-tails-you-lose" gamble. To frustrate this strategy, prosecutors would be restrained from entering plea bargains, thereby adding further to the staggering burdens of our criminal courts, and judges would become more rigid in exercising their discretion in favor of permitting withdrawal of a guilty plea. This would hardly enhance the administration of criminal justice.

436 F.2d at 107.

The participation of a defendant in the negotiation of a plea bargain successfully terminates trial proceedings that would otherwise determine the issue of guilt or innocence on all charges. Such action by the defendant, "is deemed to be a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact." *Scott, supra,* 437 U.S. at 93, 98 S.Ct. at 2194. This decision is made to avoid the potentially more severe consequences of going to trial. When the defendant's own action prevents adjudication of the greater charges, it is absurd to suggest that, in the event the defendant reneges on his plea agreement, the government has relinquished its right to

prosecute on those charges. The government simply has made a bargain which it is obligated to keep only so long as the defendant is willing to abide by its terms. When a defendant abrogates a plea agreement, he resumes his preagreement status, and the government may proceed on the original charges as if the agreement had never existed. This was illustrated by the holding in *United States v. Anderson*, 514 F.2d 583 (7th Cir. 1975), a case involving the same statute and the same question as *United States v. Williams, supra*:

> The Government here did not unequivocally relinquish its right to prosecute Anderson for violating section 2113(d). Instead, it conditionally relinquished this right provided Anderson was convicted of and remained convicted of the section 2113(b) offense. This is in direct contrast to *Green* in which the implicit acquittal on the greater charge was in no sense contingent on the continued viability of the conviction for the lesser offense. When the section 2113(b) conviction was vacated the condition precedent to the Government's agreement not to prosecute no longer existed. The Government was then free to prosecute Anderson for the section 2113(d) charge without placing him twice in jeopardy. To hold otherwise is to find that the Double Jeopardy Clause gives the defendant more than the "benefit of his bargain" and ensures that he not even be placed in jeopardy once . . . .

514 F.2d at 587.

A "mutuality of advantage" to defendants and prosecutors flows from the ratification of the bargain. *Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). When a defendant withdraws or successfully challenges his plea, the bargain is abrogated and he must be prepared to accept all of the consequences which the plea originally sought to avoid.

### III

■ To require a defendant, as the price for successfully pursuing an appeal of his original conviction, to run the

gauntlet a second time on a charge of which he implicitly had been acquitted would violate the constitutional prohibition against double jeopardy. This principle was clearly articulated in *Green v. United States, supra*:

> The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy.

355 U.S. 193–194, 78 S.Ct. 226–227. Implicit in this finding is a determination that the chilling effect on appellate rights resulting from such coercion would be offensive to constitutional principles of due process of law. The "forfeiture" apprehended in *Green* cannot, however, occur in the absence of an implied acquittal in the earlier proceedings.

It is true, as noted in Mr. Justice Roberts' Opinion in Support of Reversal in *Klobuchir, supra*, 486 Pa. 263, 405 A.2d 881, that so long as a defendant's guilty plea and consequent sentence go undisturbed, he is protected from conviction on a greater offense originally charged. That he must relinquish such protection should he be successful in challenging his guilty plea in no way, however, creates the "dilemma" contemplated in *Green*. *Green* explicitly held only that a violation of due process occurs when an appeal is conditioned on a coerced surrender of a *valid plea of former jeopardy*. Without an "implied acquittal," it is clear that, under *Green*, the claim of former jeopardy cannot be sustained. As we have concluded that there is no implied acquittal where the former conviction rests on a guilty plea accepted pursuant to a plea bargain, there can be no valid claim of former jeopardy in this case. In the absence of a valid claim of former jeopardy, the defendant's decision to abandon the protection afforded by his guilty plea cannot invoke the constitutional bar against double jeopardy, nor does it invoke a due process claim analogous to that which underlies *Green*.

■ The due process principle was extended in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) which, along with its companion case, *Simpson v. Rice,*[7] concerned prisoners who had successfully attacked their convictions for assault and burglary and had received substantially longer sentences upon reconviction for the same offenses; and in *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) where a prosecutor brought a greater charge when the defendant, after conviction, exercised his state statutory right to a trial *de novo* in a higher court. *Pearce* held that the imposition of a longer sentence in retaliation for a defendant's successful attack on his first conviction would be an unconstitutional deterrent to the exercise of appellate rights. *Perry* held that prosecutorial vindictiveness, i. e. "upping the ante" on charges to deter a challenge to the original conviction, was similarly offensive.

Inhibition of the exercise of appellate rights does not by itself, however, invoke a due process claim under *Pearce* or *Perry* unless actual vindictiveness or, at the very least, a clearly perceived potential for vindictiveness by a judge or prosecutor can be demonstrated. In *Perry*, the Supreme Court held, "The Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness'." 417 U.S. at 27, 94 S.Ct. at 2102. And in *United States ex rel. Williams, supra*, the Second Circuit noted that:

> *Pearce* expressly rejected arguments that inhibiting the invocation of appellate and collateral proceedings was by itself constitutionally offensive. *Pearce* sought to remedy only those restraints to pursue a remedy which vindictiveness might impose. We note also that the Supreme Court has upheld the validity of plea bargains entered into because of the threat of a more severe sentence following

7. *Pearce* and *Rice* were consolidated for decision by the Supreme Court and are reported together at 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656.

a jury trial, despite the fact that such bargains inhibit the defendant's exercise of his right to trial by jury.[8]

436 F.2d at 106.

Appellant here asks us to hold that mere reinstatement of the original indictment would be an unconstitutional deterrent to the exercise of appellate rights. But, as noted above by the Second Circuit, in plea bargaining the plea is always induced by confronting the defendant with the risk of more severe punishment if jury trial rights are exercised.[9] In the event the plea offer is refused, the prosecutor is never prevented by due process principles from proceeding on the original indictment, notwithstanding the fact that he has deliberately attempted to dissuade the defendant from asserting a constitutional right. The Supreme Court recently underscored its approval of this principle in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), with the following observation:

> While confronting a defendant with the risk of more severe punishment clearly may have a "discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable"—and permissible—"attribute of any legitimate system which tolerates and encourages the negotiation of pleas." [citation omitted]. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.

434 U.S. at 364, 98 S.Ct. at 668. If the Due Process Clause does not bar prosecution on the original indictment after the defendant's *refusal* of a plea bargain offer, then it cannot

---

**8.** See *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973).

**9.** See ABA Project on Standards for Criminal Justice, Pleas of Guilty § 3.1 (App. Draft 1968); Note, *Plea Bargaining and the Transformation of the Criminal Process*, 90 Harv.L.Rev. 564 (1977).

bar reinstatement of the original indictment after *revocation* of a plea agreement.

In *Bordenkircher*, a prosecutor carried out a threat made during plea negotiation to bring a new indictment charging the defendant as a habitual offender (invoking a mandatory life sentence) when the defendant refused to plead guilty to the original felony indictment (on which the maximum sentence was 10 years, and the defendant had been offered a prosecutor's recommendation of 5 years). A jury found the defendant guilty of the principal felony charge and he was sentenced to a life term. Despite the allegation that the prosecutor had brought the new expanded indictment in retaliation for the defendant's refusal to abandon his right to a jury trial, the Court affirmed the conviction, finding that the prosecutor's conduct did no more than openly present the defendant with the alternatives of foregoing trial or facing charges on which he plainly was subject to prosecution under the recidivist statute. Since the Supreme Court has permitted the threat of *increased* charges at the plea negotiation stage,[10] mere reinstatement of the original charges after an accused successfully has revoked a plea agreement, *a fortiori* would not offend constitutional principles of due process.

*Pearce* and its companion case, however, demonstrated actual, palpable vindictiveness on the part of the state. They involved the threat of a penalty unmistakably exacted in *retaliation* for pursuit of appellate rights.[11] But even

---

**10.** It undoubtedly would violate the due process rights of an accused, however, if the prosecutor were to threaten him with increased charges without first having at least *prima facie* evidence that the accused had in fact committed the more serious crimes.

**11.** To illustrate: In *Simpson v. Rice, Pearce's* companion case, the defendant pleaded guilty to four separate charges of second degree burglary and was sentenced to prison terms aggregating 10 years. The judgments were set aside 2½ years later, in a *coram nobis* proceeding, on the ground that Rice had not been accorded his constitutional right to counsel. He was retried on three of the charges, convicted, and sentenced to prison terms aggregating 25 years, with no credit being given for the time he had spent in prison on the original sentence.

under the most liberal view of the *Pearce* doctrine, vindictiveness toward appellant here could not be shown.

Even prior to *Bordenkircher*, the various United States Courts of Appeals unanimously held that the threshold event required for a showing of judicial or prosecutorial vindictiveness would be the imposition, after the defendant's exercise of a statutory or constitutional right, of *more severe* charges or penalties than those included in or contemplated under the original indictment.[12] Many of those Circuits had already provided prosecutors with broad latitude to justify increased charges, notwithstanding the "appearance" of vindictiveness.[13] *Bordenkircher* simply clarified the Supreme Court's interpretation of the standards implicit in *Pearce, supra,* and *Perry, supra.* In the wake of *Bordenkircher*, the Court of Appeals became unanimous in holding that even a *prima facie* case of prosecutorial vindictiveness would be subject to rebuttal by evidence explaining or justifying the action taken, thus negating any inference of *actual* vindictiveness.[14]

At no time, however, has any federal court held that reinstatement of *original* charges after a defendant's challenge to a negotiated plea would constitute prosecutorial vindictiveness.[15] Not even the appearance of retaliation arises when a defendant simply is returned to his pre-agree-

12. See, *inter alia, United States v. DeMarco,* 550 F.2d 1224, 1227 (9th Cir. 1977), *cert. denied,* 434 U.S. 827, 98 S.Ct. 105, 54 L.Ed.2d 85; *United States v. Jamison,* 505 F.2d 407, (D.C.Cir.1974); *United States v. Sturgill,* 563 F.2d 307 (6th Cir. 1977).

13. See, *inter alia, Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir. 1977); *Jackson v. Walker,* 585 F.2d 139 (5th Cir. 1978); *United States v. Ricard,* 563 F.2d 45 (2nd Cir. 1977); *United States v. Partyka,* 561 F.2d 118 (8th Cir. 1977).

14. See, *inter alia, United States v. Andrews,* 612 F.2d 235 (6th Cir. 1979); *United States v. Burt,* 619 F.2d 831 (9th Cir. 1980); *Martinez v. Romero,* 626 F.2d 807 (10th Cir. 1980).

15. For authority specifically rejecting such a contention, see, *inter alia, United States v. Rines,* 453 F.2d 878 (3rd Cir. 1975); *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976); and generally, *United States v. Anderson, supra,* and *United States ex rel. Williams v. McCann, supra.*

ment status after successfully abrogating his part of the plea bargain. *Pearce* and *Perry* are thus inapposite to *Klobuchir* and *Tabb* as well as to the case before us.

Nevertheless, appellant seeks to contrive the due process claim by equating the mere reinstatement of original charges with prosecutorial "vindictiveness." Apart from the fact that appellant's position is incompatible with the unanimous weight of federal authority, his view is entirely unsupportable since a prosecutor would be derelict in his duty if he did not, in the absence of a plea bargain, seek conviction on charges supported by the evidence. In *United States ex rel. Williams, supra,* the Second Circuit observed:

> Williams concedes that the original reduction from sale to attempted sale was the result of an express agreement with the prosecutor given in consideration of his plea of guilty. When Williams was successful in revoking his part of the bargain by having his plea of guilty set aside, it is hardly surprising, and scarcely suggestive of vindictiveness, that the district attorney in turn withdrew his consent to the reduced charge. Indeed, all that happened was that the prosecution was forced to proceed on the original charge which the grand jury had returned in the first instance.

436 F.2d at 106.

The charges contained in the indictment upon which appellant is to be tried are the same as those contained in the original indictment. Nothing in the present record approaches even the appearance of prosecutorial vindictiveness. Appellant revoked his bargain. Accordingly, he must be prepared to resume his pre-agreement status.

We conclude, then, that retrial on the original indictment would offend neither federal nor Pennsylvania double jeopardy or due process standards and that the order of the Court of Common Pleas must be affirmed.

Order affirmed.

NIX, J., filed a concurring opinion joined by O'BRIEN, C. J.

LARSEN and FLAHERTY, JJ., filed concurring opinions.

ROBERTS, J., filed a dissenting opinion.

NIX, Justice, concurring.

I agree and join in the opinion of Mr. Justice Kauffman insofar as it discusses the double jeopardy claim raised by appellant. The claimed double jeopardy complaint raised here is identical with the ones asserted and rejected in *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980); *Commonwealth v. Klobuchir*, 486 Pa. 241, 405 A.2d 881 (1979).

I disagree, however, with his decision to expand this interlocutory appeal to permit the consideration of any claim other than the asserted double jeopardy violation. *See Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). "A *Bolden* appeal does not permit 'piggybacking' non-double jeopardy issues." *Commonwealth v. Tabb, supra*, 491 Pa. at 375, n. 2, 421 A.2d at 185, n. 2. Nor am I impressed with the proffered reason ("the due process question herein has been a source of disagreement and confusion . . . and should now be laid to rest," pp. 402–403) for departing from the sound decision to confine these appeals to double jeopardy claims. It is also premature to consider the consequences of a possible future conviction for murder in the first degree when that eventuality may never occur. We have repeatedly refused to offer advisory opinions and should not alter that course today. Finally, the due process question does not present the urgency that would warrant the invocation of our plenary powers.

Accordingly, I would affirm the Common Pleas Court's denial of the motion in bar on the basis of a rejection of the double jeopardy complaint and refuse consideration of all other issues at this time.

O'BRIEN, C. J., joins in this opinion.

 

LARSEN, Justice, concurring.

I agree that appellant's petition to dismiss the charge of murder of the first degree on grounds of double jeopardy should be denied. I do not, however, believe that this Court should reach out to decide the interlocutory matter of appellant's wholly frivolous allegations regarding the denial of due process. Rather, these claims should be addressed, if at all, on direct appeal, and only if and when appellant has been found guilty of murder of the first degree.

FLAHERTY, Justice, concurring.

I join the majority opinion authored by Mr. Justice Kauffman but am compelled to write separately to emphasize several points.

Appellant argues that the trial court's order denying appellant's motion to dismiss the charge for first degree murder is reviewable by this Court as an interlocutory appeal on double jeopardy, due process grounds. He also argues that the trial court erred in denying his motion to dismiss the charge of first degree murder on double jeopardy, due process and equal protection grounds.

Our holding in this case does not change or expand the holding in *Commonwealth v. Bolden*, 472 Pa. 602, 609, 373 A.2d 90, 93 (1977) that the denial of a pre-trial application to dismiss an indictment *on double jeopardy grounds* may be appealed *before* the new trial takes place. We decide appellant's due process claim in this case pursuant to our extraordinary jurisdiction, 42 Pa.C.S.A. § 726, only for the purposes of clarifying an apparent misunderstanding as to the relationship between due process and double jeopardy and of laying to rest the notion that due process claims will be heard in *Bolden* appeals.

The first of appellant's propositions—that this Court may review the trial court's denial, on double jeopardy, due process and equal protection grounds, of appellant's motion to dismiss the charge—must be denied. *Bolden* permits an interlocutory appeal on double jeopardy grounds only. Due process and equal protection claims may be heard after

retrial is completed if they have been properly preserved for appeal.

The second of appellant's propositions—that the trial court erred on due process, equal protection and double jeopardy grounds in denying appellant's motion to dismiss the charge—is also without merit. The trial court properly denied the motion to dismiss the charge. In cases such as this, the due process claim, as the majority opinion states, arises out of the possibility that a defendant's invocation of his appellate rights will be chilled by fear that greater punishment may be imposed after a successful appeal or collateral attack. But this claim will fail unless (1) there has been an implied acquittal on the same charge that is again brought against a defendant or there is (2) prosecutorial or (3) judicial vindictiveness toward the defendant for having pursued a successful appeal or collateral attack on his original conviction.

Where a criminal defendant has pled guilty to less than the highest degree of all charges contained in the indictment, but then successfully attacks his plea-bargained conviction, the prosecutor, as in this case, may bring charges supported by the evidence and contained in the indictment. The essence of plea bargaining is that the prosecutor induces a criminal defendant to give up his constitutional right to a jury trial in return for conviction on a lesser charge than he would be exposed to at trial. Plea bargaining, by definition, chills the exercise of certain rights. But plea bargaining does not violate due process because when balancing the good to be achieved against the evil—unclogging an already overburdened criminal justice system as against chilling (not denying) the exercise of the right to a trial—the benefit to society manifestly outweighs the constitutional detriment to a criminal defendant.

When a defendant challenges his conviction on a bargained plea, he is asserting that the plea was improperly entered. This assertion, if true, would involve the abrogation of the defendant's due process right to a trial. The proper remedy in a case where the court grants the defend-

ant's petition to challenge his plea—the remedy consistent with due process—is to return the defendant to his original position by awarding him a trial on such charges in the indictment as the prosecutor may bring, so long as there has been no prior opportunity for a conviction on those charges * and there is no prosecutorial or judicial vindictiveness.

ROBERTS, Justice, dissenting.

For the reasons set forth in *Commonwealth v. Klobichir*, 486 Pa. 241, 405 A.2d 881 (1979) (Roberts, J., Opinion in Support of Reversal), *Commonwealth v. Newmiller*, 487 Pa. 410, 409 A.2d 834 (1979) (Roberts, J., concurring and dissenting), and *Commonwealth v. Tabb*, 491 Pa. 372, 421 A.2d 183 (1980) (Roberts, J., dissenting), I must lodge my continuing objection to the view, now expressed by the Opinion of Mr. Justice Kauffman announcing the Judgment of the Court, that despite the prohibition against double jeopardy an accused who has vindicated the well-established right to a valid guilty plea may be subjected to trial on a charge of criminal homicide greater than the charge to which the accused initially pled guilty and which the court accepted only after a review of all of the Commonwealth's evidence. Additionally, unlike Mr. Justice Kauffman, I see no reason for this Court to resort to its extraordinary jurisdiction to decide the due process and equal protection questions raised. Consideration of these questions is not appropriate on a *Bolden* appeal, see, e. g., *Commonwealth v. Santiago*, 489 Pa. 527, 414 A.2d 1016 (1980), and must await the development of a full record.

Central to Mr. Justice Kauffman's rejection of appellant's double jeopardy right is the mistaken belief that, in accepting a guilty plea, a Pennsylvania trial judge does not pass upon any higher degree of homicide. Regrettably, this mistaken belief reflects unfamiliarity with the realities of Pennsylvania practice.

* See the discussion in the majority opinion, at 404–405, for an explanation of when there has been a prior opportunity for a conviction.

"Under Pennsylvania law, before a trial court accepts any guilty plea, it must determine that there exists a factual basis to support the degree of guilt charged. *Commonwealth v. Minor*, 467 Pa. 230, 356 A.2d 346 (1976); *Commonwealth v. Ingram*, 455 Pa. 198, 316 A.2d 77 (1974); *Commonwealth v. Maddox*, 450 Pa. 406, 300 A.2d 503 (1973); Comment to Pa.R.Crim.P. 319(a). See also ABA Project on Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.6 (Approved Draft, 1968); accord, ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 4.2(b). Moreover, in non-capital murder cases, when, as here, 'a defendant enters a plea of guilty to a charge of murder generally, the judge before whom the plea was entered shall alone determine the degree of guilt.' Pa.R. Crim.P. 319(c)."

*Commonwealth v. Tabb*, supra, 491 Pa. at 383, 421 A.2d at 189. Surely it is ironic that Mr. Justice Kauffman, although holding that jeopardy did not attach upon the court's acceptance of the plea, so often states that the court, in accepting the plea, "found" appellant guilty.

The opinion of Mr. Justice Kauffman also erroneously analogizes the negotiation of a plea agreement to a contract. However, it is contrary to our criminal justice system to permit the Commonwealth to contract with a defendant. See ABA Standards Relating to the Prosecution Function and the Defense Function § 4.3 (Approved Draft, 1971) (unprofessional conduct for prosecutor to make promise or commitment concerning sentence); ABA Standards Relating to Pleas of Guilty § 1.5 (Approved Draft, 1968) (court must advise defendant personally that recommendations of prosecutor are not binding on court). Unlike a civil litigant, the prosecutor is not an ordinary party to a controversy. He is a "servant of the law," with a "twofold aim . . . that guilt should not escape or innocence suffer." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); accord, *Gannett Co. v. DePasquale*, 443 U.S. 368, 384 n.12, 99 S.Ct. 2898, 2908 n.12, 61 L.Ed.2d 608 (1979). The

prosecution, as society's representative, has an interest in assuring that a plea of guilty is voluntarily and knowingly entered. Where a plea of guilty is unlawfully induced, society has no interest in insisting that the defendant abide by his plea, or face potential harassment in the form of greater charges, for vindication of his constitutional right to a fair adjudication of guilt or innocence. In withdrawing an invalid guilty plea the defendant does not break a contract; he merely vindicates rights which both the court and the Commonwealth are obliged to protect.

Manifestly, the Commonwealth's acknowledgment and the trial court's determination in 1977 that justice would be served by a verdict and sentence on a charge of murder of the second degree should have no less force nearly four years later, in 1981. Therefore, the order of the court of common pleas should be reversed and the record remanded for trial on charges no higher than murder of the second degree.