J-E04004-17

2020 PA Super 107

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| EMILY JOY GROSS | : | |
| | : | |
| Appellant | : | No. 375 EDA 2016 |

Appeal from the Order January 15, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s):  CP-45-CR-0000045-2010

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., BOWES, J., PANELLA, J.,
SHOGAN, J., LAZARUS, J., OLSON, J., STABILE, J., and DUBOW, J.

OPINION BY GANTMAN, P.J.:                          **FILED APRIL 29, 2020**

Appellant, Emily Joy Gross, appeals from the order entered in the

Monroe County Court of Common Pleas, which denied her omnibus pretrial

motion to dismiss on double jeopardy grounds.  We affirm.

Our Supreme Court set forth the relevant facts of this case as follows:

> [Ms.] Gross and Daniel Autenrieth began a romantic
> relationship in early 2009.  On May 4, 2009, Autenrieth's
> estranged wife filed a protection from abuse (PFA) petition
> against him in Northampton County where she lived.  The
> court issued a temporary PFA order the same day
> prohibiting Autenrieth from having contact with his wife or
> children and evicting him from the marital residence.  The
> same day, deputies from the Northampton Sheriff's office
> went to Autenrieth's residence (also in Northampton
> County) to serve the temporary PFA order and to transfer
> custody of the children to Autenrieth's wife.  [Ms.] Gross
> was present, babysitting the children, and a deputy served
> the order on her as the adult in charge of the residence.
> The deputy incorrectly told [Ms.] Gross the temporary PFA
> order prohibited Autenrieth from possessing firearms.

Another deputy explained the PFA order's terms to Autenrieth over the phone. On May 18, 2009, a final PFA order was issued, which prohibited Autenrieth from possessing firearms.

[Ms.] Gross routinely stayed overnight at Autenrieth's residence, but she lived and worked in New Jersey. On May 21, 2009, she attempted to acquire a New Jersey firearm permit but was informed the process would take several months. On May 29, 2009, [Ms.] Gross obtained a Pennsylvania driver's license using Autenrieth's address; within hours, [Ms.] Gross and Autenrieth went to a Berks County store, where [Ms.] Gross used her new license to buy a 9 millimeter handgun. Later, at his residence, Autenrieth showed [Ms.] Gross how to use the gun, offered to clean it for her, then put the gun in its box and stored it and its ammunition above his washer and dryer. This was the last time [Ms.] Gross saw the gun, though a few days later she learned Autenrieth had taken the gun, fired it with a friend, and replaced the ammunition used; [Ms.] Gross made no objection.

On June 7, 2009, Autenrieth took the gun, went to his estranged wife's house, and kidnapped his nine-year-old son at gunpoint. Police were called, Autenrieth fled, and the chase went on for 40 miles, ending with a shoot-out in Monroe County in which Autenrieth killed one Pennsylvania State Trooper and wounded another before being shot to death.

A criminal complaint was filed in Monroe County charging [Ms.] Gross with criminal conspiracy, 18 Pa.C.S. § 903(a); firearms not to be carried without a license, [18 Pa.C.S.] § 6106(a)(1) (co-conspirator); possession of a firearm prohibited, [18 Pa.C.S.] § 6105(a)(1) (accomplice); and lending or giving of firearms prohibited, [18 Pa.C.S.] § 6115(a) (accomplice). A preliminary hearing was held January 15, 2010, before a Monroe County magisterial district judge. Among other motions, [Ms.] Gross moved for dismissal of the case for "lack of jurisdiction[.]" Specifically, [Ms.] Gross argued "there [was] no jurisdiction in [the magisterial] district or, in fact, in Monroe County to hear these charges." The judge denied

- 2 -

the motion, …, and bound the charges over to the Monroe County Court of Common Pleas….

On March 3, 2010, [Ms.] Gross filed an omnibus pre-trial motion, which included a "Motion to Dismiss or, in the alternative, Transfer for Improper Venue."[1]  A hearing on this motion was held May 24, 2010.  The Commonwealth did not introduce evidence other than the preliminary hearing transcript and a license to carry firearm certification regarding Autenrieth.  Both parties filed briefs to address the venue issue.  After considering the evidence and the parties' arguments, the trial court found [Ms.] Gross's "Motion to Dismiss for Improper Venue" dispositive and dismissed the case July 15, 2010, for improper venue.  The trial court addressed this motion only; it did not consider [Ms.] Gross's alternative motion to transfer for improper venue, nor did it address the remaining motions contained in her omnibus pre-trial motion.

> [1] The omnibus pretrial motion consisted of a Motion for Bill of Particulars; Motion to Compel Pretrial Discovery and Inspection; Motion to Dismiss or, in the alternative, Transfer for Improper Venue; Motion for a Change of Venue or Venire to Avoid Prejudicial Pretrial Publicity; Motion to Quash Criminal Complaint or Return of Transcript, and/or Petition for Writ of *Habeas Corpus*; and Motion for Recusal/Appointment of Out–of–County Judge.

Venue was held improper based on a lack of factual connection to Monroe County.[2]  Specifically, both the trial court and the Superior Court concluded the evidence showed the alleged conspiracy was not reached in Monroe County, [Ms.] Gross committed no acts in furtherance of the conspiracy in Monroe County, and the conspiracy ended in Northampton County.  The Commonwealth argues the lower courts erred in finding improper venue, noting all charges filed against [Ms.] Gross were based on conspiracy and accomplice liability and her co-conspirator, Autenrieth, committed an overt act in Monroe County.  Alternatively, the Commonwealth contends that even if venue was improper, the trial court should have transferred the proceedings instead of dismissing them.

2 In its Rule 1925(a) opinion, the trial court reiterated dismissal was solely because Monroe County was not a county of proper venue, and not based on any allegation of pre-trial publicity that would inhibit [Ms.] Gross from receiving a fair and impartial trial there.

***Commonwealth v. Gross***, 627 Pa. 383, 388-90, 101 A.3d 28, 31-32 (2014) (internal citations omitted). In the context of venue as it relates to conspiracy charges, the Supreme Court continued:

At the hearing on the omnibus motion filed by [Ms.] Gross, the Commonwealth submitted the preliminary hearing transcript, supporting its belief that venue in Monroe County was proper. [Ms.] Gross only offered legal argument in response; thus, the Commonwealth's evidence was uncontradicted and constituted the entire factual record relative to [Ms.] Gross's venue challenge. The trial court held [Ms.] Gross could not be prosecuted in Monroe County because the conspiracy between [Ms.] Gross and Autenrieth was reached and completed in Northampton County and Autenrieth's possession of the firearm in Monroe County did not constitute an overt act in furtherance of the criminal agreement. In this, the court misperceived the nature of the charges brought.

The material elements of conspiracy are: "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." ***Commonwealth v. Spotz***, 562 Pa. 498, [540-41], 756 A.2d 1139, 1162 (2000) (citation omitted). An "overt act" means an act done in furtherance of the object of the conspiracy. ***See*** 18 Pa.C.S. § 903(e); ***Commonwealth v. Weimer***, 602 Pa. 33, [39], 977 A.2d 1103, 1106 (2009). Additionally, in connection with questions of venue, this Court noted "a prosecution for criminal conspiracy may be brought in any county where the unlawful combination was formed, or in any county where an overt act was committed by any of the conspirators in furtherance of the unlawful combination." ***Commonwealth v. Fithian***, 599 Pa. 180, [201-02], 961

A.2d 66, 78 (2008) (citing **Commonwealth v. Thomas**, 410 Pa. 160, [164], 189 A.2d 255, 258 (1963)).

The record is sufficient to show a criminal conspiracy between Autenrieth and [Ms.] Gross, under which [Ms.] Gross would purchase a firearm for the purpose of providing Autenrieth with access to a gun he was otherwise prohibited from possessing. Because of this criminal agreement, Autenrieth was able to use the firearm on two occasions, including the day he took the gun and used it in Monroe County. The trial court determined the conspiracy agreement ended May 29, 2009, at the time [Ms.] Gross left the firearm with Autenrieth at his residence in Northampton County. However, the trial court failed to appreciate that the object of the conspiracy articulated by the charges was to provide Autenrieth with unlimited possession and unconditional access to a firearm, and such was not completed or terminated May 29, 2009, but continued as long as [Ms.] Gross allowed Autenrieth to possess her gun. **See** 18 Pa.C.S. § 903(g)(1) ("[C]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom he conspired[.]"); **Commonwealth v. Evans**, 489 Pa. 85, [92], 413 A.2d 1025, 1028 (1980) ("The duration of a conspiracy depends upon the facts of the particular case, that is, it depends upon the scope of the agreement entered into by its members." (…citation omitted)). [Ms.] Gross did not object or withdraw her authorization. Autenrieth's taking the firearm and carrying it constituted the overt act, and that possessory act did not cease when he crossed into Monroe County. Accordingly, the trial court erred in dismissing the conspiracy charges, as the record was sufficient to establish [Ms.] Gross, as co-conspirator, could be found vicariously liable for Autenrieth's possession of the firearm, in Monroe County, and thus, could be prosecuted in that county.

The trial court also erred in finding dismissal was warranted for the counts charging [Ms.] Gross as an accomplice in the crimes of illegal possession of a firearm and lending or giving a firearm. The trial court found [Ms.] Gross could not be an accomplice in Monroe County

- 5 -

because Autenrieth, not [Ms.] Gross, possessed the gun there. Also, both the trial court and the Superior Court concluded [Ms.] Gross could not be charged as an accomplice because "there is no evidence that she intended to aid or promote Autenrieth's shootout with the police." *Commonwealth v. Gross*, No. 2006 EDA 2010, unpublished memorandum at 7, 2011 WL 5111048 (Pa.Super. filed July 13, 2011) (citing Trial Court Opinion, 7/15/10, at 11)). This factual statement may be true, but it is irrelevant, reflecting a misapprehension of the charges filed. [Ms.] Gross was never charged as an accomplice in the shooting; rather, she was charged as an accomplice in the illegal possession of a firearm, and the evidence offered was sufficient to prove she could be convicted as an accomplice to such illegal possession in Monroe County.

"An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense." *Commonwealth v. Cox*, 546 Pa. 515, [529], 686 A.2d 1279, 1286 (1996) (citations omitted). There is no minimum amount of assistance or contribution requirement, for "[i]t has long been established…that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony." *Commonwealth v. Flowers*, 479 Pa. 153, [157], 387 A.2d 1268, 1270 (1978)…. Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity. *See Commonwealth v. Pierce*, 437 Pa. 266, [268], 263 A.2d 350, 351 (1970) (where assistance "is rendered to induce another to commit the crime and actually has this effect, no more is required." (citation omitted)). Absence or presence at the scene and the participant's role in the complicity are not dispositive of whether accomplice liability exists. *See Commonwealth v. Murphy*, 577 Pa. 275, 844 A.2d 1228, 1234 (2004) ("[A] defendant cannot be an accomplice simply based on evidence that he…was present at the crime scene." (citation omitted)). Accomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person. *See* 18 Pa.C.S. § 306.

> Because Autenrieth was present with the gun in Monroe County, and [Ms.] Gross aided Autenrieth's illegal possession of that firearm, [Ms.] Gross could be found liable as an accomplice for Autenrieth's illegal possession wherever he was, including Monroe County. Accordingly, we conclude the Commonwealth proved by a preponderance of the evidence that [Ms.] Gross could be prosecuted under all criminal charges in Monroe County. The trial court's finding to the contrary was erroneous.
>
> *   *   *
>
> In light of the foregoing, we conclude the trial court erred in finding venue improper in Monroe County and in dismissing the case. Order reversed. Case remanded to the trial court for consideration of any unaddressed issues.

*Id.* at 393-97, 101 A.3d at 34-36 (some internal citations omitted). In sum, the Supreme Court held: (1) the Commonwealth met its burden to prove by a preponderance of evidence that venue in Monroe County was proper on conspiracy and accomplice liability, because the Commonwealth had demonstrated Appellant could be found vicariously liable for Mr. Autenrieth's possession of a firearm in Monroe County; and (2) the record was sufficient to show Appellant conspired with and aided Mr. Autenrieth in the illegal possession of the firearm "wherever he was." *Id.* The Supreme Court reversed and remanded the matter to the Monroe County Court of Common Pleas for consideration of any unaddressed issues. *Id.*

While the appeal on venue was pending in state court, the United States Attorney filed an information in the U.S. District Court for the Eastern District of Pennsylvania on November 4, 2009, charging Appellant with

making false statements to a federal firearms licensee in violation of 18 U.S.C. § 922(a)(6), and aiding and abetting a prohibited person to possess a firearm in violation of 18 U.S.C. § 922(g)(8) and 18 U.S.C. § 2. Specifically, the federal government alleged Appellant had lied on a required federal document in connection with her purchase of a firearm and then aided and abetted Mr. Autenrieth's possession of the firearm, even though she knew he was not permitted to possess a firearm.

On February 2, 2011, Appellant pled guilty to only one federal charge, *i.e.*, making false statements to a federal firearms licensee; and the federal authorities dropped the count of aiding and abetting prohibited possession of a firearm. The federal court accepted the plea and sentenced Appellant on May 9, 2011, to seven (7) months' imprisonment followed by three (3) years of supervised release, including a period of home confinement, plus a fine and special assessment of $100.00.

Following our Supreme Court's resolution of the state appeal, the state case was remanded to the Monroe County Court of Common Pleas in 2014, to consider any unaddressed issues. On remand, the trial court held more pretrial hearings on May 4, 2015, May 11, 2015, and September 15, 2015. At each of the pretrial hearings, Appellant focused almost exclusively on her request for recusal of the entire Monroe County bench, or in the alternative, recusal of each successive jurist assigned to the case, on the grounds of

local publicity and excessive community pressure, because Appellant alleged that no local jurist could appear impartial.

At the May 4, 2015 hearing, some of the outstanding omnibus pretrial issues were disposed as law of the case, such as improper venue; by agreement, such as request for discovery; held in abeyance, such as a motion for change of venue pending *voir dire*; or by briefing, such as the legal issues pertaining to Appellant's motion for a bill of particulars and recusal. The court also heard Appellant's motion for *habeas corpus* relief for lack of a *prima facie* case.

The proceedings on May 11, 2015, were for the specific purpose of reinstating a defense motion for recusal on the new ground that defense counsel was assisting in an investigation of issues arising from the court's use of non-shorthand reporters (voice recording reporters) to take notes of testimony of court proceedings. Counsel argued these circumstances could give the impression that President Judge Patti-Worthington was either favoring the defense or "possibly bending over backwards not to give the appearance of impropriety by favoring the Commonwealth." (**See** N.T. 5/11/15, at 3.) By order filed on June 9, 2015, President Judge Patti-Worthington denied Appellant's motion to appoint an out-of-county judge but granted Appellant's motion for recusal and reassigned the case to the Honorable Arthur L. Zulick.

> After reassignment the Honorable Arthur L. Zulick held a Status Conference on June 26, 2015. On July 16, 2015,

> [Appellant] filed a new Motion to Recuse, which was granted on July 29, 2015, at which time the case was assigned to [the Honorable Steven M. Higgins].
>
> Following reassignment, [Judge Higgins] scheduled the Status Conference for August 6, 2015, at which time [Appellant] renewed [her] "Motion for Recusal and Appointment of an Out-of-County [J]udge."

(Trial Court Opinion, filed January 15, 2016, at 4).

At the hearing on September 15, 2015, the court declared the issue of recusal of the entire Monroe County bench as having already been denied. Appellant offered nothing unique to sustain her request for the personal recusal of Judge Higgins, who explained he was inclined to deny the motion but would take the request for his individual recusal under advisement. By order filed on September 18, 2015, the court denied Appellant's recusal motion and set a briefing schedule for both sides to file supplemental briefs in support of their positions on the remaining issues Appellant had raised in her omnibus pretrial motion.

On October 16, 2015, Appellant filed a supplemental brief in support of her omnibus pretrial motion and, for the first time, she raised a double jeopardy challenge to the Commonwealth's case. While recognizing the continuing legal concept of "dual sovereignty," Appellant nevertheless argued that the federal and state prosecutions against her derived from the same conduct, related to the same governmental interests, and the federal government's dismissal of the aiding and abetting count collaterally estopped the Commonwealth from prosecuting Appellant for conspiracy. As

- 10 -

she did at the *habeas corpus* hearing, Appellant asserted there was no evidence to show she knew or had any reason to know of any firearm prohibition against Mr. Autenrieth. Appellant concluded she had already served a sentence in federal prison for charges arising from the same allegations presently before the state court, which should be dismissed **as a matter of law** under 18 Pa.C.S.A. § 111 and its progeny. (**See** [Appellant's] Supplemental Brief In Support of Omnibus Pretrial Motion, filed 10/16/15, at 4-8.) Essentially, Appellant relied on the same facts she had raised in her *habeas corpus* motion and hearing, but she clad them in the different legal theories of double jeopardy and collateral estoppel.

In its supplemental brief in opposition, the Commonwealth responded, *inter alia*, to the three-part test of Section 111 by stating: (1) Appellant's false statements on ATF Form #4473 (federal firearms transactional record) involved separate conduct and constituted distinct offenses, which included different elements designed to prevent different harms; and (2) the mere fact that some of the evidence used in the federal prosecution might overlap with the state prosecution was not dispositive. (**See** Commonwealth's Brief, Supplemental, In Opposition to [Appellant's] Omnibus Pretrial Motions, filed 11/9/15, at 1-8.)

Appellant filed a supplemental reply brief, where she argued again, in relevant part, that the federal and state prosecutions were duplicative, arising from the same facts and addressing the same governmental

interests. Appellant concluded: "An objective review of the statutes reveals that the purposes of these laws are the same—to prohibit the possession of firearms by individuals not licensed to possess or prohibited from possessing a firearm, and there is no reading of these statutes which would permit one to find that the statutes were intended to prevent substantially different harms." (*See* [Appellant's] Reply In Support of [Appellant's] Omnibus Pretrial Motion, filed 11/30/15, at 2-8.) Given the extensive pretrial proceedings, the trial court denied Appellant's remaining pretrial claims on January 15, 2016, including, as a matter of law, her claims of double jeopardy and collateral estoppel.

Appellant timely filed a notice of appeal on January 22, 2016. By order entered on January 26, 2016, the court directed Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b). Appellant timely complied on February 16, 2016. On appeal, a three-judge panel of this Court initially reversed the order on double jeopardy grounds and dismissed the case against Appellant. The Commonwealth timely sought *en banc* review, which this Court granted by order filed on May 12, 2017.

Appellant's sole issue on appeal is as follows:

> DID THE TRIAL COURT ERR IN FAILING TO DISMISS THE INFORMATION AGAINST [APPELLANT], WHERE THE INFORMATION ARISES OUT OF THE SAME CONDUCT FOR WHICH [APPELLANT] HAS ALREADY BEEN PROSECUTED FOR, CONVICTED OF AND SENTENCED ON BY THE FEDERAL GOVERNMENT, AND THE COMMONWEALTH DID

NOT CARRY ITS BURDEN OF PROVING THAT THE FEDERAL GOVERNMENT'S PRIOR PROSECUTION WAS INTENDED TO PREVENT A SUBSTANTIALLY DIFFERENT HARM OR EVIL THAN THE COMMONWEALTH'S?

(Appellant's Brief at 3).

As a prefatory matter, Pennsylvania law has traditionally provided a criminal defendant the right to an immediate appeal from an order denying a pretrial motion to dismiss on double jeopardy grounds. *Commonwealth v. Orie*, 610 Pa. 552, ___, 22 A.3d 1021, 1024 (2011). *See also Commonwealth v. Haefner*, 473 Pa. 154, 156, 373 A.2d 1094, 1095 (1977) (stating: "[D]enial of a pre-trial motion to quash an indictment, where the motion alleges that a second trial will violate a defendant's right not to be placed twice in jeopardy, is a final, appealable order"); *Commonwealth v. Minnis*, 83 A.3d 1047, 1049 n.1 (Pa.Super. 2014) (*en banc*) (stating: "An appeal from a pre-trial order denying double jeopardy protection is final and appealable"); *Commonwealth v. Gains*, 556 A.2d 870, 874 (Pa.Super. 1989) (*en banc*) (stating: "The Supreme Court of Pennsylvania has determined that an immediate appeal may be taken from an order denying a pretrial motion to dismiss on double jeopardy grounds"); *Commonwealth v. Feaser*, 723 A.2d 197, 199 n.2 (Pa.Super. 1999) (stating: "'Pre-trial orders denying double jeopardy claims are immediately appealable in the absence of a written finding of frivolousness' by the hearing court"); *Commonwealth v. Davis*, 708 A.2d 116, 117 n.1 (Pa.Super. 1998) (stating: "Pretrial orders denying double jeopardy claims

are final orders for purposes of appeal"); ***Commonwealth v. Teagarden***, 696 A.2d 169, 170 n.2 (Pa.Super. 1997), *appeal denied*, 549 Pa. 726, 702 A.2d 1060 (1997) (citing ***Commonwealth v. Brady***, 510 Pa. 336, 508 A.2d 286 (1986); ***Commonwealth v. Wolfe***, 684 A.2d 642 (Pa.Super. 1996); ***Commonwealth v. Breeland***, 664 A.2d 1355 (Pa.Super. 1995)) (stating: "Pre-trial orders denying double jeopardy claims are immediately appealable in the absence of a written finding of frivolousness by the trial court that heard the claims. … Such a rule strikes the appropriate balance between the defendant's protection against being placed in double jeopardy against the public's interest in prompt trials of the criminally accused"); ***Commonwealth v. Smith***, 552 A.2d 292 (Pa.Super. 1988), *appeal denied*, 524 Pa. 596, 568 A.2d 1247 (1989) (noting generally that trial court's denial of pretrial motion to dismiss on double jeopardy claims is immediately appealable, absent written finding that motion is frivolous).

Our Supreme Court outlined the genesis of the right to an immediate appeal from a trial court's pretrial decision on double jeopardy as follows:

> Generally, criminal defendants have a right to appeal a trial court's pre-trial double jeopardy determination under ***Commonwealth v. Bolden***, 472 Pa. 602, 373 A.2d 90 (1977) (plurality opinion). While ***Bolden*** was a plurality decision, a *per curiam* decision by the Court shortly thereafter made clear that a Court majority agreed with the important narrow proposition that "pretrial orders denying double jeopardy claims are **final orders** for purposes of appeal." [***Haefner, supra*** at 156, 373 A.2d at 1095] (*per curiam*) (emphasis added).

Eight years later, in [**Brady, supra**], this Court considered the question of whether a **Bolden** of-right appeal should be permitted to go forward when the trial court has concluded that the double jeopardy motion is frivolous. The **Brady** Court held that where the trial court makes a written statement finding that the pre-trial double jeopardy challenge is frivolous, a **Bolden**-style interlocutory appeal will not be permitted because it would only serve to delay prosecution.

In reaching this conclusion, the **Brady** Court noted that precluding **Bolden** appeals and automatic stays of retrial upon a written finding that the claim is frivolous still affords the defendant "the opportunity to initially assert his claim before a tribunal and retrial is not permitted unless the claim is shown to the satisfaction of that court to be frivolous." As pertinent here, the Court explained that a second double jeopardy protection was available: "a defendant may challenge the finding of frivolousness in the context of a request for a stay from an appellate court." The contemplated stay procedure provided "at least a preliminary review by an appellate judge of the finding of frivolousness prior to a retrial." Third, **Brady** noted that appellate review of the merits would be available on direct appeal in the event of a conviction. The Court conceded that it was possible that a meritorious double jeopardy claim could be "overlooked by both a hearing court and the appellate court in which a stay is sought." But, on balance, the Court concluded that this minimal risk was justified by the need for prompt trials and expeditious dispositions. The Court pointed out that the availability of an automatic stay upon filing a **Bolden** appeal "encourages the use of frivolous appeals as a means of avoiding prosecution." Such "needless delays engendered by frivolous appeals hinder the administration of justice as well as the public interest."

Thus, the **Brady** Court envisioned a preliminary avenue for limited appellate review of the trial court's written finding that a defendant's double jeopardy challenge was frivolous *via* a stand-alone stay procedure, which would be unrelated to a pending appeal as of right. The **Brady** Court did not further address exactly how such stay reviews would proceed. Nor did the Court directly address

which appellate court would conduct the review-*via*-stay, albeit the Court spoke generically of a stay "from an appellate court" and later adverted to "the appellate court in which a stay is sought," without suggesting that all such appeals would proceed directly to this Court.

The **Brady** Court's failure to explicitly identify which appellate court should hear stay review challenges to a pre-trial finding that a double jeopardy challenge was frivolous became the controlling issue in the first published opinion from the Superior Court to address the **Brady** procedure. *See Commonwealth v. Learn*, 356 Pa.Super. 382, 514 A.2d 910, 911–12 (1986), *overruled on other grounds by* [**Gains, supra**]. In **Learn**, the panel opined that a stay request under **Brady** could not be made to that appellate court because there was no appeal pending. In the panel's view, absent a pending appeal, the Superior Court's jurisdiction was not implicated by the trial court's action. Instead, the **Learn** court concluded that a **Brady** stay request has to be made directly to this Court. The **Learn** court did not transfer the stay request to this Court, however, because the trial judge had made no written finding that the double jeopardy motion was frivolous. Instead, the panel remanded to the trial court for that determination.[4]

> [4] The remand aspect of **Learn** was later overruled in **Gains**. **Gains** held that a trial court's failure to make a written finding that the motion was frivolous perfected the double jeopardy appeal under **Bolden**, and **no remand was proper or required**.

\* \* \*

We believe the most efficacious remedy is to employ the existing procedures of Chapter[s 13 and] 15 of the Rules of Appellate Procedure and permit a petitioner seeking review of a trial court's finding of frivolousness to file a Petition for Review in the Superior Court, as Petitioner has done here. The centerpiece of [these chapters] is the use of the "petition for review" as the vehicle for implicating the jurisdiction of the appellate court. …

Given the appropriate use of a petition for review as the vehicle for obtaining the narrow of-right appellate review contemplated by **Brady**, any desired stay should be sought per the ordinary stay procedure and in conformity with the governing decisional law. **See** Pa.R.A.P. 1781 (stay pending petition for review); **Pennsylvania Pub. Utility Comm'n v. Process Gas Consumers Group**, 502 Pa. 545, 467 A.2d 805 (1983). Finally, should the Superior Court overturn the trial court's finding of frivolousness, the petitioner would be free to file a notice of appeal as of right under **Bolden**. If the intermediate court upholds the finding of frivolousness, any further recourse to this Court is by [Petition for Allowance of Appeal].

We emphasize that the appellate court's consideration of a petition for review in the **Brady** setting is preliminary in nature. Thus, in a case such as this one, it does not answer the merits of the underlying question of whether the trial court abused its discretion in declaring a mistrial. That question will be answered if the appeal is permitted to go forward under **Bolden**. Again, at the **Brady** petition for review stage, the appellate court's focus is on the finding of frivolousness.

Of course, the appellate court's review of the trial court's finding of frivolousness may require some preliminary assessment of the ruling or event giving rise to the double jeopardy challenge—here, Petitioner's challenge to the underlying propriety of the trial court's declaration of a mistrial. Accordingly, we have granted review of the second question raised by Petitioner, as quoted above, so that our remand permits the Superior Court to address this underlying question, to the degree necessary, in order to assess the trial court's finding of frivolousness.

**Orie, supra** at \_\_\_, 22 A.3d at 1024-28 (some internal citations and footnotes omitted) (some emphasis added). The **Orie** Court addressed the right to immediate appeal where the trial court expressly finds the double jeopardy claim is frivolous. **Id.** at \_\_\_, 22 A.3d at 1024. Essentially, the

- 17 -

*Orie* Court modified *Brady* by holding that a defendant who has had a pretrial double jeopardy challenge denied as frivolous could seek interlocutory review of that decision if the defendant filed a petition for permissive review under the applicable rules of appellate procedure. *Orie, supra* at ___, 22 A.3d at 1026-27. Significantly, *Orie* reinforced the general rule permitting an interlocutory appeal as of right from the denial of a pretrial motion to dismiss on double jeopardy grounds if the trial court made no finding of frivolousness. *Id.* at ___, 22 A.3d at 1024 (stating generally that pretrial orders denying double jeopardy claims are final orders for purposes of appeal).

Consistent with the legal precedent recapped in *Orie*, an order denying a double jeopardy motion, that makes no finding that the motion is frivolous, is a collateral order under Rule 313 of the Pennsylvania Rules of Appellate Procedure:

> **Rule 313.  Collateral Orders**
>
> **(a)   General rule.**  An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
>
> **(b)   Definition.**  A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313 (effective July 4, 2013).  Rule 313 is **jurisdictional** in nature. *Commonwealth v. Blystone*, 632 Pa. 260 269, 119 A.3d 306, 312 (2015).

The *Note* to Rule 313 states that an established example of a collateral order is an order denying a pretrial motion to dismiss "based on double jeopardy in which the court does not find the motion frivolous." Pa.R.A.P. 313 *Note* (citing ***Orie, supra*** and ***Brady, supra***). The planned amendment to the official note of Rule 313 continues this precedent and states in relevant part as follows:

> *Official Note:* If an order meets the definition of a collateral order, it is appealed by filing a notice of appeal or petition for review. Pa.R.A.P. 313 is a codification of existing case law with respect to collateral orders.
>
> \*   \*   \*
>
> Examples include…**an order denying a pre-trial motion to dismiss on double jeopardy grounds if the trial court does not also make a finding that the motion to dismiss is frivolous. *See Commonwealth v. Brady*, 508 A.2d 286, 289–91 (Pa. 1986) (allowing an immediate appeal from denial of double jeopardy claim under collateral order doctrine where trial court does not make a finding of frivolousness); *Commonwealth v. Orie*, 22 A.3d 1021 (Pa. 2011). An order denying a pre-trial motion to dismiss on double jeopardy grounds that also finds that the motion to dismiss is frivolous is not appealable as of right as a collateral order, but may be appealable by permission under Pa.R.A.P. 1311(a)(3).**

Pa.R.A.P. 313, *Official Note* (effective August 1, 2020). Bearing the relevant version of Rule 313 in mind, along with the planned amendment, Pennsylvania law makes clear that an order denying a double jeopardy motion, which makes no finding that the motion is frivolous, is a collateral order under Rule 313 an immediately appealable. ***See id.***

- 19 -

Instantly, we can answer any jurisdictional query regarding this appeal by direct reference to Rule 313 of the appellate rules, together with **Orie, supra**, **Brady, supra** and other longstanding and still viable precedent such as **Haefner, supra**; **Minnis, supra**; **Gains, supra**; **Feaser, supra**; **Davis, supra**; **Teagarden, supra**; **Wolfe, supra**; **Breeland, supra**; **Smith, supra**.  Here, the trial court denied Appellant's pretrial double jeopardy motion as a matter of statutory law with no finding of frivolousness.  Absent a finding that Appellant's claim was frivolous, the trial court's order in this case was immediately appealable as a collateral order.  **See** Pa.R.A.P. 313 *Note* (stating "If an order falls under Rule 313, an immediate appeal may be taken as of right simply by filing a notice of appeal"); **Blystone, supra**.  Thus, we can state with confidence that this appeal is properly before us for resolution.[1]

_____

[1] After the **Orie** decision, Pa.R.Crim.P. 587 was also amended, effective July 4, 2013, to govern the procedure **in the trial court** filing and addressing a double jeopardy motion to dismiss; it does not, however, govern or control appellate jurisdiction.  **See** Pa.R.Crim.P. 587.  Whether the trial court followed or deviated from Rule 587 does not deprive this Court of appellate jurisdiction; our jurisdiction is conferred under Rule 313 of the appellate rules and enduring precedent.  Likewise, Rule 587 defects do not fall under the aegis of the few non-jurisdictional matters appellate courts can raise *sua sponte*, nonexclusively for example: an indigent petitioner's right to counsel in a first PCRA proceeding and, relatedly, the failure of the trial court to conduct a hearing, per **Commonwealth v. Guy Thomas Grazier**, 552 Pa. 9, 713 A.2d 81 (1998), to ensure a defendant has knowingly and voluntarily waived his right to counsel for his first PCRA petition; counsel's failure to file a court-ordered concise statement under Pa.R.A.P. 1925(b) in criminal cases; the trial court's lack of original jurisdiction in specific scenarios; the
*(Footnote Continued Next Page)*

With respect to Appellant's substantive double jeopardy issue, she argues the state's current prosecution is for the same conduct as her federal prosecution. Appellant also submits the interests served by her prior federal prosecution are substantially the same as the interests being served in the current state prosecution, *i.e.*, to prevent the dissemination of firearms to persons, like Mr. Autenrieth, who was not permitted to possess firearms because of the danger posed. Appellant insists the "identity of interest" can be drawn from the purposes of the two statutory schemes at issue. Although Appellant concedes the state charges of conspiracy (and

*(Footnote Continued)* ————————

legality of a sentence (which is quasi-jurisdictional to the extent no court has jurisdiction to impose an illegal sentence); and issues of mootness, but not ripeness or standing. Thus, absent proper preservation and development, Rule 587 errors or flaws are subject to the general tenets of waiver on appeal. *See* Pa.R.A.P. 302(a) (stating generally: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"); Pa.R.A.P. 1925(b) (generally waiving issues not properly preserved in court-ordered concise statement); *Commonwealth v. Bishop*, ___ A.3d ___, ___, 217 A.3d 833, 840 (2019) (reiterating proper issue preservation "facilitates an orderly system of justice"; consistent and predictable operation of appellate process depends on issue preservation, which "enables the courts of original jurisdiction, in particular, to correct mistakes and affords opposing parties a fair opportunity to respond" even if trial court is bound by contrary appellate ruling); *Commonwealth v. Colavita*, 606 Pa. 1, 28-29, 993 A.2d 874, 891 (2010) (reiterating general rule that courts should not reach claims for first time on appeal, or *sua sponte* raise claims or theories not raised in trial court or on appeal).

Here, Appellant first raised her double jeopardy claim in a supplemental brief and demanded relief as a matter of law. She neither preserved nor raised any issue regarding the trial court's method of resolving her claim. Under the circumstances of this case, any deviations from the Rule 587 procedures are not properly before us for analysis.

accomplice liability) are not brought directly under the Uniform Firearms Act, she contends we should look to the most serious criminal objective of the alleged collusion to decide the Section 111 test for "substantially different" interests. To that end, Appellant states her double jeopardy claim demands more than just a mechanical comparison of the federal and state statutes to ascertain whether the interests protected in the state's case are substantially different from the interests served in the federal case. Appellant maintains the federal government's sentencing memorandum makes clear Appellant's federal prosecution was not just for providing false information when she purchased the firearm, but also for creating the conditions which allowed Mr. Autenrieth to gain possession of her firearm and to use it in his crimes. Even if the interests of the two prosecutions are not completely coextensive, Appellant suggests the interests served by the prior federal and current state prosecutions are substantially alike such that Section 111 and its progeny precludes the Commonwealth's sequential prosecution of Appellant. Appellant concludes the Commonwealth's prosecution violates her right against double jeopardy, and this Court should reverse the trial court's decision to deny relief on this ground and dismiss the charges against Appellant. We disagree.

"[T]he question of whether a defendant's constitutional right against double jeopardy [would be infringed by a successive prosecution] is a question of law." *Commonwealth v. Hallman*, 67 A.3d 1256, 1260

(Pa.Super. 2013), *appeal denied*, 624 Pa. 662, 84 A.3d 1062 (2014). When presented with a question of pure law, our standard of review is *de novo* and our scope of review is plenary. **Commonwealth v. Byrd**, 209 A.3d 351, 353 (Pa.Super. 2019) (citing **Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa.Super. 2008)); **Commonwealth v. Kositi**, 880 A.2d 648, 652 (Pa.Super. 2005). **See also Commonwealth v. Calloway**, 675 A.2d 743 (Pa.Super. 1996) (discussing how 18 Pa.C.S.A. § 111 can operate to bar successive prosecutions, which presents question of law subject to plenary review).

Importantly, "The prohibition of double jeopardy, as it relates to subsequent prosecutions, is irrelevant until jeopardy has once attached." **Commonwealth v. Arelt**, 454 A.2d 108, 111 (Pa.Super. 1982). In the context of a plea deal, jeopardy does not attach to crimes, which were dropped as part of a guilty plea agreement. **Commonwealth v. Tabb**, 491 Pa. 372, 376, 421 A.2d 183, 186 (1980), *cert. denied*, 450 U.S. 1000, 101 S.Ct. 1708, 68 L.Ed.2d 202 (1981) (describing concept of continuing jeopardy, but holding that concept does not protect defendant against retrial for crimes he pled guilty to, where plea is voided on appeal through defendant's own procurement). By the same token, the dismissal of a charge in federal court, as part of a plea deal, does not represent a conviction or an acquittal that might prevent a subsequent prosecution in state court. **Commonwealth v. Schmotzer**, 831 A.2d 689 (Pa.Super.

2003), *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004).

As a general rule, "The double jeopardy protections afforded by the United States and Pennsylvania Constitutions are coextensive and prohibit successive prosecutions and multiple punishments for the same offense." **Commonwealth v. Crissman**, 195 A.3d 588, 591 (Pa.Super. 2018). This general rule applies in most cases, with the exception of those cases involving allegations of prosecutorial misconduct, where our state constitution provides greater double jeopardy protection than its federal counterpart. **Minnis, supra** at 1052 (recapping increased constitutional protection against double jeopardy, where defendant alleges prosecutorial misconduct; outcome of double jeopardy claim depends on nature of alleged misconduct, *i.e.*, whether misconduct was undertaken in bad faith to prejudice or harass defendant); **Feaser, supra** at 200 (reiterating that our state constitution extends greater double jeopardy protection in cases of intentional and egregious prosecutorial misconduct). If, however, prosecutorial misconduct is not the basis of the defendant's application for double jeopardy relief, then we employ a unitary double jeopardy analysis to the case at hand. **Id.**

Our examination of Appellant's claim involves the intersection of specific legal doctrines, 18 Pa.C.S.A. § 111, and relevant case law. To begin, the United States Supreme Court recently upheld longstanding precedent based on the dual-sovereignty doctrine, which allows separate

sovereigns to prosecute a defendant for the same conduct, without violating the defendant's constitutional double jeopardy protections. ***Gamble v. United States***, ___ U.S. ___, 139 S.Ct. 1960, 204 L.Ed.2d 322 (2019). Specifically, the dual-sovereignty doctrine enables a state to prosecute a defendant under state law even if the federal government has prosecuted her for the same conduct under federal law. ***Id.*** The rationale for this doctrine is that the federal and state governments are separate and unique authorities, each defining its own laws; therefore, even the same conduct might violate two laws and still comprise two separate offenses. ***Id.*** "A close look at [our cases] reveals how fidelity to the Double Jeopardy Clause's text does more than honor the formal difference between two distinct criminal codes. It honors the substantive differences between the interests that two sovereigns can have in punishing the same act." ***Id.*** at ___, 139 S.Ct. at 1966, 204 L.Ed.2d at ___.

As between the state and the federal jurisdictions or between the jurisdictions of the different states, Pennsylvania law approaches the test for successive prosecutions, in the context of double jeopardy, *via* 18 Pa.C.S.A. § 111, which provides:

> **§ 111.    When prosecution barred by former prosecution in another jurisdiction**
>
> When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct **unless**:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted.

18 Pa.C.S.A. § 111 (emphasis added).[2]  Section 111(1)(i) generally involves

the following study:

The first inquiry is whether…the prosecution which the Commonwealth proposes to undertake involves the same conduct for which the individual was prosecuted by the other jurisdiction.  If the answer to this question is yes,

_____

[2] Section 111 derives directly from federal constitutional law, although our Supreme Court recognized an argument could be made that our state constitution provides "greater protection" because Section 111 retained the "same conduct" test, which federal law subsequently overruled.  ***See Commonwealth v. Jones***, 542 Pa. 464, 506 n.25, 668 A.2d 491, 511 n.25 (1996), *cert. denied*, 519 U.S. 826, 117 S.Ct. 89, 136 L.Ed.2d 45 (1996).  Nevertheless, we have found no cases which directly hold this proposition.

> then we must determine whether **each** prosecution requires proof of a fact not required by the other, **and** whether the law defining the Commonwealth offense is designed to prevent a substantially different harm or evil from the law defining the other jurisdiction's offense. If the Commonwealth cannot satisfy both of these requisites, then the prosecution may not proceed.

*Calloway, supra* at 747 (emphasis in original). As a preliminary matter, "A pretrial motion to dismiss a criminal prosecution based upon a double jeopardy claim imposes certain procedural burdens upon the Commonwealth. [W]hen a defendant raises a non-frivolous *prima facie* claim that a prosecution may be barred under 18 Pa.C.S.A. § 111, the [Commonwealth] bears a burden to prove by a preponderance of the evidence either that the 'same conduct' is not involved, or that a statutory exception to the statutory bar on reprosecution applies." *Commonwealth v. Wetton*, 591 A.2d 1067, 1070 (Pa.Super. 1991), *affirmed*, 537 Pa. 100, 641 A.2d 574 (1994) (emphasis omitted). A bold claim of "different conduct" will not suffice; the Commonwealth must specifically address this issue in the pretrial litigation. *Id.* On the other hand, the "same conduct" inquiry requires more than just a similarity of charges in the current and prior prosecutions. *Id.* A "mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *Commonwealth v. Caufman*, 541 Pa. 299, 304, 662 A.2d 1050, 1052 (1995).

When a conspiracy charge is at issue, the focus of a "same conduct" analysis under Section 111 is the ultimate object or purpose of the

agreement, which might not be the same in both prosecutions. ***Breeland, supra*** at 1362 (reasoning federal prosecution for drug distribution conspiracy involved acts which were only peripherally implicated in state prosecution for conspiracy to kill, assault, and/or rob specific individuals; Section 111 did not bar state prosecution). Section 111 does not bar a subsequent conspiracy prosecution if the first prosecution was based on different conduct. ***Id.***

Even before its passage, the concepts underlying Section 111 were subject to a difficult interpretative evolution, beginning with a very broad or descriptive view of the conduct assessed (and the jurisdictional interest involved), whereas later cases employed a more analytical perspective. ***Compare Commonwealth v. Mills***, 447 Pa. 163, 286 A.2d 368 (1971) (plurality) (holding defendant could not be prosecuted for bank robbery and firearms offenses in state court, after his guilty plea to same bank robbery and assault in federal court, where state interests were sufficiently protected in federal prosecution) ***with Jones, supra*** (holding defendant's conviction in federal court for conspiracy to possess with intent to distribute cocaine in ongoing criminal enterprise did not preempt state prosecution of defendant for murder and conspiracy to commit murder, although several overt acts alleged in federal case were introduced in state prosecution to prove motive for murder, where conspiracy surrounding murder had been deleted from

federal indictment and trial).[3]

If the same conduct is involved in the sequential prosecutions, then we

---

[3] ***See, e.g., Commonwealth v. Traitz***, 528 Pa. 305, 597 A.2d 1129 (1991) (holding prosecution for violations of federal Racketeer Influenced and Corrupt Organizations Act (RICO) barred subsequent prosecution under counterpart state statute of Corrupt Organizations Act, where both cases involved same pattern of racketeering activity or same conduct for Section 111 purposes); ***Commonwealth v. Frank Grazier***, 481 Pa. 622, 393 A.2d 335 (1978) (holding prior acquittal in federal court of mail fraud related to arson scheme barred subsequent state trial for substantive crime of arson, where both cases were based on substantially same evidence and federal prosecution in case largely vindicated state's interests); ***Commonwealth v. Savage***, 566 A.2d 272 (Pa.Super. 1989) (holding defendant's federal conviction for conspiracy barred state conspiracy charges, where relevant overt acts in federal conspiracy were series of bulk purchases of cocaine for resale and relevant overt act in state conspiracy was single sale of smaller bulk amount of cocaine for resale; Commonwealth failed to prove cases were based on separate conspiracies); ***Commonwealth v. Mascaro***, 394 A.2d 998 (Pa.Super. 1978) (holding guilty plea in federal court to mail fraud and false statements, related to defendant's common and continuing scheme of overcharging on service contract, barred state prosecution for theft by deception, deceptive business practices, unsworn falsification to authorities, and criminal conspiracy, where state charges were based on same conduct of overcharging on contract; all statutes were aimed at preventing theft and fraud, so federal prosecution protected state interests). ***But see Breeland, supra*** (holding federal prosecution for conspiracy to distribute illegal drugs did not bar state prosecution for conspiracy to kill, assault, or rob two rival drug dealers, because each prosecution was based on different conduct and state conspiracy prosecution only peripherally implicated drug distribution).

Under the "same conduct" test for 18 Pa.C.S.A. § 110, this Court has held that statutory double jeopardy does not bar successive prosecutions if the offenses are based on different acts, even if the offenses occur close in time, as long as there is no "substantial duplication" of factual or legal issues presented. ***See, e.g., Commonwealth v. Jefferson***, ___ A.3d ___, 2019 PA Super 302 (filed October 9, 2019); ***Commonwealth v. Miller***, 198 A.3d 1187 (Pa.Super. 2018); ***Commonwealth v. Kolovich***, 170 A.3d 520 (Pa.Super. 2017), *appeal denied*, 645 Pa. 689, 182 A.3d 429 (2018); ***Commonwealth v. Hockenbury***, 667 A.2d 1135 (Pa.Super. 1995), *affirmed*, 549 Pa. 527, 701 A.2d 1334 (1997).

next assess whether one prosecution requires proof of a fact, which the other prosecution does not require; we do this evaluation by comparing the elements of the statutes involved. ***Jones, supra*** at 506, 668 A.2d at 511 (utilizing historically espoused "same elements" test of ***Blockburger v. United States***, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) and ***United States v. Dixon***, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993)).

The federal statute relevant to this case provides as follows:

**§ 922.  Unlawful acts**

**(a)** It shall be unlawful—

* * *

(6)  for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter

18 U.S.C.A. § 922(a)(6).  Section 924 is the companion penalties provision to Section 922(a)(6) and states:

**§ 924.  Penalties**

**(a)(1)** Except as otherwise provided in this subsection, subsection (b), (c), (f), or (p) of this section, or in section 929, whoever—

**(A)** knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter or in applying for any license or exemption or relief from disability under the provisions of this chapter;

* * *

shall be fined under this title, imprisoned not more than five years, or both.

**(2)** Whoever knowingly violates subsection (a)(6)…of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 924(a)(1)(A), (a)(2).

Pennsylvania's conspiracy statute states in relevant part:

**§ 903.  Criminal conspiracy**

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission [she]:

(1)  agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime[.]

18 Pa.C.S.A. § 903(a)(1).  "The material elements of conspiracy are: '(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy.'  An 'overt act' means an act done in furtherance of the object of the conspiracy.  ***See*** 18 Pa.C.S. § 903(e)…."  ***Gross, supra*** at 393, 101 A.3d at 34.

The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a

- 31 -

particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, [she] is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.

*Commonwealth v. Johnson*, 180 A.3d 474, 479 (Pa.Super. 2018), *appeal denied*, ___ Pa. ___, 205 A.3d 315 (2019) (quoting *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa.Super. 2002), *affirmed*, 577 Pa. 275, 844 A.2d 1228 (2004)).

Accomplice liability in Pennsylvania is defined as follows:

**§ 306.  Liability for conduct of another; complicity**

**(a)  General rule.**—A person is guilty of an offense if it is committed by [her] own conduct or by the conduct of another person for which [she] is legally accountable, or both.

**(b)  Conduct of another.**—A person is legally accountable for the conduct of another person when:

\*    \*    \*

(3)  [she] is an accomplice of such other person in the commission of the offense.

**(c)  Accomplice defined.**—A person is an accomplice of

- 32 -

another person in the commission of an offense if:

> (1) with the intent of promoting or facilitating the commission of the offense, [she]:
>
>> (i) solicits such other person to commit it; or
>>
>> (ii) aids or agrees or attempts to aid such other person in planning or committing it…
>
> \* \* \*
>
> **(g) Prosecution of accomplice only.**—An accomplice may be convicted on proof of the commission of the offense and of [her] complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

18 Pa.C.S.A. § 306(a), (b)(3), (c)(1)(i-ii), (g).

> An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. There is no minimum amount of assistance or contribution requirement, for [i]t has long been established…that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony. Thus, even non-substantial assistance, if rendered with the intent of promoting or facilitating the crime, is sufficient to establish complicity. **Accomplice liability does not create a new or separate crime; it merely provides a basis of liability for a crime committed by another person**.

*Gross, supra* at 395, 101 A.3d at 35 (internal citations omitted) (emphasis added).

Conspiracy and accomplice liability are essentially different legal concepts with diverse requirements for mental culpability. ***Commonwealth v. Roebuck***, 612 Pa. 642, 657, 32 A.3d 613, 622 (2011). "[A]n accomplice is equally criminally liable for the acts of another if [the accomplice] acts with the intent of promoting or facilitating the commission of an offense and agrees, aids, or attempts to aid such other person in either planning or committing that offense." ***Commonwealth v. Rios***, 554 Pa. 419, 427, 721 A.2d 1049, 1053 (1998). Unlike conspiracy, the term "commission of the offense" in the accomplice context focuses on the conduct of the accomplice, not the result of the offense. ***Roebuck, supra*** at 652, 32 A.3d at 619. "This diffuses any impression that an accomplice must always intend results essential to the completed crime." ***Id.*** (reasoning Section 306 of Pennsylvania Crimes Code derives from Model Penal Code and does not require accomplice necessarily to intend to cause prohibited result; culpability can result from something less than purposeful, such as recklessness; holding defendant could be convicted of third-degree murder under complicity theory). "Again, accomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense." ***Id.*** at 658, 32 A.3d at 623. Accomplice liability simply requires the defendant to have the mental state necessary for the commission of the crime, *i.e.*, aiding the principal. ***Id.*** at 659, 32 A.3d at 624.

The final step in the Section 111 inquiry involves whether the law defining the Commonwealth offense is designed to prevent a substantially different harm or evil than the law defining the other jurisdiction's offense. **Calloway, supra**. "If the separate statutes are intended to prevent a substantially different harm or evil, then the statutes are meant to protect substantially different government interests." **Wetton, supra** at 1072. A prior prosecution of the same conduct does not automatically vindicate all governmental interests. **Id.**

The primary interest of 18 U.C.S.A. § 922(a)(6) is to keep firearms out of the hands of **prohibited purchasers** and to protect the integrity of the federal record-keeping requirements needed to assist law enforcement in investigating serious crimes through the tracing of guns to buyers. **Abramski v. United States**, 573 U.S. 169, 134 S.Ct. 2259, 189 L.Ed.2d 262 (2014). "Before a federally licensed firearms dealer may sell a gun, the would-be purchaser must provide certain personal information, show photo identification, and pass a background check. To ensure the accuracy of those submissions, a federal statute imposes criminal penalties on any person who, in connection with a firearm's acquisition, makes false statements about 'any fact material to the lawfulness of the sale.'" **Id.** at 171, 134 S.Ct. at 2262-63, 189 L.Ed.2d at 171 (stating main interest of statute is to limit gun sales to *bona fide* purchasers and protect record-keeping purpose of statute; extending statute to "straw purchasers").

Under Pennsylvania law, "The evil against which conspiracy statutes are directed is the illegal agreement or combination for criminal purposes. Separate underlying predicate acts are merely circumstantial proof of the agreement." **Breeland, supra** at 1362 (quoting **Savage, supra** at 284) (emphasis omitted). "[C]onspiracy is a continuing course of conduct which terminates when the crime or crimes which are its object are committed or the agreement that they be committed is abandoned by the defendant and by those with whom [s]he conspired[.]" 18 Pa.C.S.A. § 903(g)(1). In the context of "substantially different interests," to support a conclusion that the federal prosecution adequately protected the state's interests, it is not enough to say the statutes involved are all intended to prevent the same general area of crime. **Calloway, supra** at 748. Instead, "An examination of the specific harm or evil targeted by the statute must be conducted, as the evil to be deterred is one of the pivotal considerations in the **Mills** interest analysis." **Wetton, supra** at 1072.

Instantly, Appellant lived and worked in New Jersey, but she decided to obtain a Pennsylvania driver's license and use Mr. Autenrieth's address as her own, so she could purchase a firearm in Pennsylvania. That same day, Appellant purchased a firearm at a Berks County store, where she used her new Pennsylvania driver's license with Mr. Autenrieth's address to complete the federal firearm paperwork.

The Commonwealth charged Appellant with criminal conspiracy (as co-

- 36 -

conspirator to firearms not to be carried without a license), accomplice liability (related to possession of a firearm prohibited), and accomplice liability (related to lending or giving of firearms prohibited). Following litigation of Appellant's initial omnibus pretrial motions back in 2010, the trial court dismissed the state claims against Appellant on the ground of improper venue. While that decision was pending on appeal in the state appellate Courts, the federal authorities charged Appellant with making false statements to a federal firearms licensee and aiding and abetting a prohibited person to possess a firearm. Pursuant to an agreement, Appellant pled guilty only to the federal charge of making false statements, and the aiding and abetting charge was dropped. Therefore, jeopardy did not attach to the aiding and abetting charge. *See Tabb, supra*; *Schmotzer, supra*.

After our Supreme Court remanded this case to the trial court, Appellant filed a new pretrial motion to bar prosecution on the basis of double jeopardy, which the court denied. Under the dual sovereignty doctrine, Appellant's wrongdoings constituted separate offenses under federal and state law. *See Gamble, supra*. Nevertheless, our analysis does not end here.

The threshold inquiry under Section 111 is whether Appellant's state prosecution is based on the "same conduct" as her federal prosecution. According to the background information for the written guilty plea

agreement in the federal case, Appellant was charged with making false statements to a federal firearms licensee when Appellant completed an ATF Form 4473 during the purchase of a firearm in Pennsylvania on May 29, 2009. Appellant provided a temporary Pennsylvania photo driver's license and auto insurance card she had obtained earlier that day to a firearms dealer, as proof of her Pennsylvania residence. When Appellant filled out the ATF Form 4473, she listed Mr. Autenrieth's address as her residence, when she knew that information was false, because she did not actually live or reside at Mr. Autenrieth's place in Pennsylvania, nor was she a Pennsylvania resident. Appellant knew at the time of gun purchase that she was a New Jersey resident who lived with her parents in their New Jersey home, where she had her own room, kept most of her clothes, and received her mail. Nevertheless, Appellant signed the form swearing the information she had provided was true, correct, and complete.

What Appellant did after acquiring the firearm, such as storing the firearm at Mr. Autenrieth's house or how she allowed him access to the firearm and how he used the firearm, was not prosecuted. That information was intended solely as background for the seriousness of the fraud charge prosecuted. To be precise, the federal government expressly stated: "The government has no evidence that [Appellant] knew that [Mr.] Autenrieth would engage in this criminal episode or use the gun in this manner." (**See** Attachment Five to [Appellant's] Supplemental Omnibus Pretrial Motion-

Motion to Dismiss—Double Jeopardy, Collateral Estoppel, 18 Pa.C.S.A. § 111, and Speedy Trial (Government's Sentencing Memorandum, filed 4/19/11, at 4).) The federal prosecutor included these facts (a) to demonstrate that while Appellant's offense was not a violent crime, the ultimate consequences were both violent and deadly; and (b) to ensure a sentence that would deter others from making false statements on the ATF Form 4473. (*Id.* at 7-9). ***See, e.g., United States v. Thomas***, 760 F.3d. 879 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 1013, 190 L.Ed.2d 883 (2015) (stating district court may consider uncharged or dismissed conduct as relevant factor for sentencing purposes so long as court does not impose sentence above statutory maximum for crime of conviction). The federal sentencing memorandum made clear that the government prosecuted Appellant solely for the fraudulent purchase of the firearm under federal law, and the federal court sentenced Appellant solely on that conviction.

Appellant's illegal purchase of the firearm is not the conduct that actually led to Mr. Autenrieth's appropriation of the firearm. Appellant's reliance on the federal sentencing memorandum, to insist the Commonwealth is prosecuting Appellant for the same conduct is both conclusory and misguided. The Commonwealth did not charge Appellant with Pennsylvania's counterpart statute under 18 Pa.C.S.A. § 6111(g)(4) (stating: "Any person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm

under this chapter, he knowingly and intentionally: (i) makes any materially false oral statement; (ii) makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies; or (iii) willfully furnishes or exhibits any false identification intended or likely to deceive the seller, licensed dealer or licensed manufacturer"). Significantly, our Supreme Court already acknowledged:

> The record is sufficient to show a criminal conspiracy between [Mr.] Autenrieth and [Ms.] Gross, under which [Ms.] Gross would purchase a firearm for the purpose of providing [Mr.] Autenrieth with access to a gun he was otherwise prohibited from possessing. Because of this criminal agreement, [Mr.] Autenrieth was able to use the firearm on two occasions, including the day he took the gun and used it in Monroe County. The trial court determined the conspiracy agreement ended May 29, 2009, at the time [Ms.] Gross left the firearm with [Mr.] Autenrieth at his residence in Northampton County. However, the trial court failed to appreciate that the object of the conspiracy articulated by the charges was to provide [Mr.] Autenrieth with unlimited possession and unconditional access to a firearm, and such was not completed or terminated May 29, 2009, but continued as long as [Ms.] Gross allowed [Mr.] Autenrieth to possess her gun. …

> [Ms.] Gross did not object or withdraw her authorization. [Mr.] Autenrieth's taking the firearm and carrying it constituted the overt act, and that possessory act did not cease when he crossed into Monroe County. Accordingly, the trial court erred in dismissing the conspiracy charges, as the record was sufficient to establish [Ms.] Gross, as co-conspirator, could be found vicariously liable for [Mr.] Autenrieth's possession of the firearm….

> The trial court also erred in finding dismissal was warranted for the counts charging [Ms.] Gross as an accomplice in the crimes of illegal possession of a firearm and lending or giving a firearm. The trial court found [Ms.]

> Gross could not be an accomplice in Monroe County because [Mr.] Autenrieth, not [Ms.] Gross, possessed the gun there. Also, both the trial court and the Superior Court concluded [Ms.] Gross could not be charged as an accomplice because "there is no evidence that she intended to aid or promote [Mr.] Autenrieth's shootout with the police." ***Commonwealth v. Gross***, No. 2006 EDA 2010, unpublished memorandum at 7, 2011 WL 5111048 (Pa.Super. filed July 13, 2011)…. This factual statement may be true, but it is irrelevant, reflecting a misapprehension of the charges filed. [Ms.] Gross was never charged as an accomplice in the shooting; rather, she was charged as an accomplice in the illegal possession of a firearm, and the evidence offered was sufficient to prove she could be convicted as an accomplice to such illegal possession….

***Gross, supra*** at 393-95, 101 A.3d at 34-35 (some internal citations omitted).

When Appellant raised a "same conduct" argument on remand in the context of double jeopardy, the Commonwealth opposed the motion to dismiss by: (1) referring to the Supreme Court's decision which is law of the case; (2) stating Appellant provided no real analysis and misstated Pennsylvania law on double jeopardy; (3) stating Appellant failed to analyze or compare the facts underlying the federal charge with the facts underlying the pending state charges; and (4) concluding the evidence used in the federal case was only peripherally related to the state case against Appellant. ***See Caufman, supra*** (emphasizing mere overlap of facts in successive prosecutions will not establish double jeopardy violation); ***Breeland, supra*** (stating ultimate object or purpose of agreement might not be equivalent in both prosecutions). The certified record supports the

- 41 -

Commonwealth's position on all points. Thus, we conclude the federal and state prosecutions in this case are not based on the same conduct; and Appellant's Section 111 double jeopardy claim fails at the outset.

In an abundance of caution, we will give some attention to the remaining Section 111 inquiries (same-elements prong and the substantially different-interests prong). Regarding the same elements test of Section 111, we employ the *Blockburger* and *Dixon* analysis. *See Jones, supra*. The only federal statute at issue for purposes of this double jeopardy analysis involves the making of false or fictitious oral or written statements or furnishing or exhibiting any false, fictitious, or misrepresented identification to a federal firearms licensee to acquire a firearm, where the aiding and abetting charge was dropped as part of the plea agreement and jeopardy did not attach to that offense. *See Tabb, supra*; *Arelt, supra*. Section 922(a)(6) requires proof that a defendant knowingly made a false statement to a federally licensed arms dealer. None of the state statutes at issue contains this fraud element. *Compare* 18 U.S.C. § 922(a)(6) *with* 18 Pa.C.S.A. § 903 (§ 6106 related) and § 306 (§§ 6105 and 6115 related). Likewise, the state charges contain elements not included in the federal prosecution, namely, an illegal agreement for criminal purposes (conspiracy), or promotion or intent to aid in the commission of the underlying state offenses (accomplice liability) related to the unlicensed

carrying, possession, and lending of firearms.[4]  **_See_** 18 Pa.C.S.A. §§ 306,

---

[4] Section 6106 states in relevant part:

### § 6106.  Firearms not to be carried without a license

### (a) Offense defined.—

(1)   Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

(2)   A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106(a)(1)-(2).  The relevant portion of Section 6105 is as follows:

### § 6105.  Persons not to possess, use, manufacture, control, sell or transfer firearms

### (a) Offense defined.—

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*    \*    \*

*(Footnote Continued Next Page)*

903; ***Murphy, supra***. Thus, the prior federal and the current state charges require different elements of proof. In other words, proof of the federal offense did not establish a commission of the state offenses, and the state offenses will not necessitate relitigating the federal fraud offense. ***See*** 18 Pa.C.S.A. § 111(1)(i); ***Calloway, supra***. A mere overlap of some of the facts in the two prosecutions does not establish a double jeopardy violation.

*(Footnote Continued)* ───────────────

> **(c) Other persons.―**In addition to any person who has been convicted of any offense listed under subsection (b), the following persons shall be subject to the prohibition of subsection (a):
>
> \* \* \*
>
> (6) A person who is the subject of an active final protection from abuse order issued pursuant to 23 Pa.C.S. § 6108, is the subject of any other active protection from abuse order issued pursuant to 23 Pa.C.S. § 6107(b), which provided for the relinquishment of firearms during the period of time the order is in effect…. This prohibition shall terminate upon the expiration or vacation of the order or portion thereof relating to the relinquishment of firearms.

18 Pa.C.S.A. § 6105(a)(1), (c)(6). Section 6115 in pertinent part states:

> **§ 6115. Loans on, or lending or giving firearms prohibited**
>
> **(a) Offense defined.―**No person shall make any loan secured by mortgage, deposit or pledge of a firearm, nor, except as provided in subsection (b), shall any person lend or give a firearm to another or otherwise deliver a firearm contrary to the provisions of this subchapter.

18 Pa.C.S.A. § 6115(a).

*See Caufman, supra*.

Finally, the law defining the Commonwealth's charges is designed to avert a substantially different harm or evil than the federal offense. **See** 18 Pa.C.S.A. § 111(1)(i); **Calloway, supra**. Section 922(a)(1) seeks to limit gun sales to *bona fide* **purchasers** and to protect the integrity of the federal record-keeping requirements needed to assist law enforcement in investigating serious crimes through the tracing of guns to buyers. **See Abramski, supra**. In contrast, the state charge of conspiracy is directed at the illegal agreement or combination for criminal purposes, in this case the illegal possession, use, and lending of firearms.[5] **See** 18 Pa.C.S.A. § 903; **Breeland, supra**. The state's accomplice liability seeks to prevent the aid, solicitation, or agreement in the planning or commission of a related criminal offense, but it does not necessarily involve the ultimate result of the related offense. **See** 18 Pa.C.S.A. § 306; **Cox, supra**. Importantly, the

---

[5] Section 6106 seeks to prevent the unlicensed possession of a firearm in this Commonwealth. **Commonwealth v. Toomer**, 159 A.3d 956, 960 (Pa.Super. 2017), *appeal denied*, 642 Pa. 431, 170 A.3d 979 (2017). The purpose of Section 6105 is to "protect the public from convicted criminals who possess firearms…." **Commonwealth v. Gillespie**, 573 Pa. 100, 105, 821 A.2d 1221, 1224 (2003), *cert. denied*, 540 U.S. 972, 124 S.Ct. 442, 157 L.Ed.2d 320 (2003). **See also Commonwealth v. Williams**, 151 A.3d 1113, 1116 (Pa.Super. 2016), *appeal denied*, 641 Pa. 737, 169 A.3d 568 (2017) (stating: "The clear purpose of [Section] 6105 is to protect the public from convicted criminals who possess firearms, regardless of whether the previous crimes were actually violent..."). Section 6115 aims to prohibit all lending of firearms, with some exceptions, even if the lender legally possesses the firearm. **Commonwealth v. Corradino**, 588 A.2d 936, 940 (Pa.Super. 1991).

Commonwealth did not charge Appellant with a violation of the correlative state offenses of Section 6116 (relating to false evidence of identity) or Section 4904 (relating to unsworn falsification to authorities).

We cannot step back so far that we lose proper perspective and blur the differences among all of the statutes at issue simply because the statutes are related to firearms. As between the federal statute and the Pennsylvania statutes at issue, each requires proof of a fact the other does not and each intends to prevent a substantially different harm or evil, even though the statutes involve firearms generally. Said another way, the federal and state statutes prosecuted might have overlapping purposes but their interests are plainly distinct. Thus, we decline to disturb the court's ruling on Appellant's motion to dismiss. *See* 18 Pa.C.S.A. § 111(1)(i); *Calloway, supra*.[6]

Based upon the foregoing, we have interlocutory jurisdiction under Rule 313 of the appellate rules over this timely appeal from the order

---

[6] Due to our disposition, we decline to distinguish or overrule *Williams, supra*.

Further, the federal government dropped the charge of aiding and abetting as part of Appellant's plea deal in federal court, so the Commonwealth is not "collaterally estopped" from charging Appellant under the theories of conspiracy and accomplice liability related to Mr. Autenrieth's access to or possession and use of Appellant's firearm, as these issues played no part in her federal guilty plea. *See Teagarden, supra* at 171 (stating collateral estoppel will bar subsequent prosecution only if issue in both prosecutions is sufficiently similar and sufficiently material, and issue was litigated and necessarily decided in first action).

denying Appellant's double jeopardy motion to dismiss. We further hold that the pending state charges in this case are not based on the "same conduct" as the prior federal prosecution, so Appellant's Section 111 double jeopardy claim fails at the outset. Appellant's Section 111 claim also fails the remaining prongs of the statutory test. As presented, the trial court correctly denied Appellant's motion to dismiss on double jeopardy grounds. Accordingly, we affirm, albeit on a slightly different basis, and remand for further proceedings. **See Commonwealth v. Reese**, 31 A.3d 708, 727 (Pa.Super. 2011) (*en banc*) (stating appellate court may affirm order of trial court on any basis if ultimate decision is correct).

Order affirmed; case remanded for further proceedings. Jurisdiction is relinquished.

President Judge Emeritus Bender, Judge Bowes, Judge Panella, Judge Lazarus, and Judge Olson join this opinion.

Judge Olson files a concurring opinion in which President Judge Emeritus Bender and Judge Bowes join.

Judge Stabile files a dissenting opinion in which Judge Shogan and Judge Dubow join.

Judge Dubow files a dissenting opinion in which Judge Shogan and Judge Stabile join.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*


*Date:* *4/29/2020*